[No. 2,684.]

## OLIVER IRWIN *v.* A. P. TOWNE AND SAMUEL H. TOWNE.

TITLE IN EJECTMENT.—In ejectment, where both parties claim under a common source of title, it is unnecessary for the Court to investigate the question of title unless the plaintiff's deed includes the demanded premises.

BETTER TITLE IN EJECTMENT.—Where both parties in ejectment rely on paper title the possession of the defendant cannot be disturbed unless the plaintiff shows a better title.

DEED—DESCRIPTION BY RIGHT ANGLE.—A deed which contains a call describing a boundary as a line commencing one hundred yards below the mouth of a certain creek (naming it) and to run at right angles with the creek, there being nothing on the face of the deed to indicate that the creek does not run in a perfectly straight course, or that a straight line drawn along the thread of the stream would not intersect the beginning point of the contested line, is not void for uncertainty on its face in respect to such line. A perpendicular line drawn from this base would answer the call in the deed.

IDEM—BASE FOR RIGHT ANGLE, HOW ESTABLISHED.—In order to run a line at right angles to a tortuous stream a straight line must first be established as a base. This can be done only by ascertaining and reducing to a straight line either the general course of the stream, from its source to its mouth, or that portion of the stream which shall appear to have been within the contemplation of the parties at the time of the execution of the deed.

CONSTRUCTION OF DEED—LOCATION OF LINE.—A deed from J. to I. contained a call which referred to a creek "running from San Rafael to the Bay of San Francisco." It appeared that the stream above the Village of San Rafael was a running stream but a part of the year, and was not known by the same name as the part below; also, that below the village the stream is navigable a portion of the distance from its mouth. The stream is referred to in another portion of the deed as "the creek running from San Rafael to the Bay of San Francisco;" *held*, that the parties making the deed intended to refer to the portion of the stream below San Rafael only, and that a straight line drawn from the head of the stream to its mouth would establish a base line for a right angle called for in the deed.

IDEM—DESCRIPTION BY ANGLE AND BY DIRECTION.—I. claimed title under a deed which described a boundary line as "commencing on a line at a point one hundred yards below the mouth of the creek running from San Rafael to the Bay of San Francisco, on the easterly side of said creek; thence running at right angles to said creek to the highest ground on the ridge;" and T. claimed under another deed a line as commencing "at a point about one hundred yards below the mouth of San Rafael Creek, and running thence northwesterly, or at right angles with the said creek, to a point on the top of the main ridge." There being no visible monument called for at the end of the line in T.'s deed to fix its location; *held*, that the term "northwesterly," used in his deed, is less definite than the call in I.'s deed to run at right angles.

LINES NAMED IN DEED.—The terms "northwesterly," "northerly," "northeasterly," etc., are only construed as "due north," "due northwesterly," etc., when such construction is necessary to prevent a failure of the deed for want of certainty, and must yield to another more definite description in the deed.

APPEAL from the District Court of the Seventh Judicial District, County of Marin.

The parties owned adjoining tracts of land, and the controversy was as to the location of the boundary line between them.

The plaintiff's deed described the line thus: "Commencing on a line at a point one hundred yards below the mouth of the creek running from San Rafael to the Bay of San Francisco, on the easterly side of said creek; thence running at right angles to said creek to the highest ground on the ridge."

The description in the deed to the defendants was as follows: "Commencing at a point about one hundred yards below the mouth of San Rafael Creek, running thence northwesterly, or at right angles with the said creek, to a point on top of the main ridge."

The other facts are stated in the opinion of the Court.

*J. McM. Shafter*, for Appellant.

The fact is, the creek· is east and west, *i. e.* its general course, and a right angle is north. · The law of this descrip-

tion is: the natural boundary, a right angle to the general course of the creek, must be preferred. "The rectangular figure will be preferred in preference to any other in fixing localities." (*Massie* v. *Watt*, 6 Cranch, 148; *Holmes* v. *Trout*, 7 Pet. 171.) The term "at right angles" to a stream is not unfrequently used in conveyances, and is not regarded as uncertain. It is ordinarily construed to be a right angle to the course of the stream, so far as the same is directly under the eye and observation of the parties. (*Winthrop* v. *Curtis*, 3 Greenl. R. 103.) The Court state the question to be, whether a certain line is to be ascertained "by measuring at all points at right angles with the general course of the river;" and further say: "Probably meaning according to its direction from the place at which the admeasurement was made." If this word "place" is held to mean the very "point," then Towne would take next to no land at all.

The case cited was decided by taking right angles from every part to get the parallel. Our case requires this angle from the whole creek, that is, from its general course. (*Keith* v. *Reynolds*, 3 Green. R. 363.) At "right angles" to a crooked brook is spoken of by the Court as being appropriate and operative words in a deed, and no doubt are expressive as to the certainty of such descriptive call. (*Craig* v. *Hawkins' Heirs*, 1 Bibb, Ky. 53.) "Down stream one mile, and northwardly for quantity;" *held*, that the mile was a direct line, and that northwardly only fixed the side of the stream where the land lay; and that the side line should be at right angles to the base. And it is said that "the law, the rules of construction, will give figure to the survey without violating the natural import of the expression." Northward is only meant to mean north by necessity. (*Calk* v. *Stribling*, 1 Bibb, 123.) Same points; and "definite call at right angles not to yield to an indefinite call northwardly." There was a strong effort made to compel "right angles" to yield to "northwardly." Or, in other words,

"that the expression at right angles must be so taken as to render it consistent with the expression northwardly." But it certainly would be a singular construction to make a definite call yield to one which is indefinite. (*Clarke* v. *Markham*, 2 A. K. Marshall, 163.) San Rafael Creek had a well-known signification, and was right under the eyes of the parties when the deed was made.

*B. S. Brooks*, for Respondents.

It is not a fact that the creek is east and west, *i. e.* its general course, and that a right angle is north. The course of the creek itself is a matter of doubt, dependent upon the construction of the term. It will be different in each of the following cases: 1. Taking the stream at low water; 2. Taking it at ordinary high water; 3. Taking it at Spring tides, or what is the same thing, taking in the salt marsh through which it meanders; 4. Taking the creek from its head to the mouth; 5. Taking the creek from the head of tide water to the mouth; 6, 7. Taking a line from either to the point one hundred yards below the mouth of the creek; 8, 9. Running either of these lines to a point opposite the middle of the mouth of the creek, and the point from which the line is to run; 10, 11, 12. Taking as the creek that part of it only which is in sight from the point from which, etc., and either respectively at low tide, high tide, or Spring tide, and besides all this, it is impossible to run a line at right angles, of a thing it does not touch. There only remained to take the remaining call of the deed, which was to run "northwesterly," which was clear and certain.

There is no general rule that the rectangular figure will be preferred in preference to any other in fixing localities. That rule, and the authorities cited, apply exclusively to locations or State lands, by virtue of special State laws.

The term "at right angles to a stream" may do very well when the line touches or starts from the stream, and when there is no other call, and the course of the stream is reasonably near a straight line.

There was nothing in this case to show how far the course of the stream was directly under the eye and observation of the parties, nor where they were when they agreed upon the line, or whether they were upon the land at all, or used a map, which is quite as likely. The element which is called in to determine an uncertainty in the deed is itself quite as uncertain.

In *Winthrop* v. *Curtis*, cited by appellant, no such point was in question, and the only point decided was, "a grant of a tract of land extending the space of fifteen miles on each side of the Kennebeck River," is to be located in such a manner as that a point in the exterior line shall be exactly fifteen miles from the nearest point of the river." That is, instead of drawing lines parallel to the general course of the stream, they draw meandering lines, keeping fifteen miles from the stream.

The case of *Keith* v. *Reynolds* is to the same effect, and directly against the appellant. If a line parallel to a stream is a crooked line conforming to its meanders, and not a straight line parallel to its general course, it follows that a line at right angles to a stream is not to be drawn at right angles to its general course, but to the stream at the point where it touches.

The cases of *Craig* v. *Hawkins' Heirs*, *Calk* v. *Stribling*, and *Clarke* v. *Markham*, are all decisions in regard to locations made upon State lands by locators under and by virtue of the statute of that State; and even if they touched the point, which they do not, would be no authority.

Manifestly the call for a line at right angles to a crooked stream, which it does not touch, is on its face uncertain, and apparently impossible; while the call "northwest" is

clear and certain, and prima facie, it must govern. If this certain call can be construed at all by parol evidence against the interest of the grantee—which I deny—the solution of it would depend upon the examination of a multitude of facts, of indefinite importance; and as to the truth of the evidence, in support of the facts, and as to the persuasive force of the facts themselves, the jury, or the Judge sitting as a jury, and having the advantage of a "view," alone could judge.

By the Court, CROCKETT, J.:

The action was tried by the Court, and no written findings were filed. Judgment was entered for the defendants, and the plaintiff appeals from an order denying his motion for a new trial. Both parties claim under a common source of title, the conveyance under which defendants deraign title being prior in time. Each claims that his own deed embraces the premises in controversy, and that the deed of his adversary does not. The defendants being in possession, it will be unnecessary to consider their title, unless it appears that the deed to the plaintiff includes the land in contest. He cannot disturb their possession, unless he shows the better title. The first descriptive call in the deed from Jacks and wife to the plaintiff is as follows: " Commencing on a line at a point one hundred yards below the mouth of the creek, running from San Rafael to the Bay of San Francisco, on the easterly side of said creek; thence running at right angles to said creek to the highest ground on the ridge."

The defendants insist that a line commencing one hundred yards below the mouth of the creek, and to run at right angles with the creek, is incapable of being located with reasonable precision. But there is nothing on the face of the deed to indicate that the creek does not run in a per-

fectly straight course, or that a straight line drawn along
the thread of the stream would not intersect the beginning
point of the contested line.   In that event a perpendicular
line drawn from this base would answer the call in the deed,
which is, therefore, not void for uncertainty on its face, in
respect to this line.   But the proof shows that the creek is
exceedingly tortuous throughout its whole course from San
Rafael to its mouth, and that, after an abrupt curve towards
the north, it enters the bay nearly at a right angle.   The
tide ebbs and flows in it, and the land on either side is flat
and marshy.   It further appears that the creek from San
Rafael to its mouth is navigable by small craft for a portion
of the distance, whilst above San Rafael the stream does
not run in the dry season, but during the Winter is supplied
by springs rising in the mountains several miles distant.
Below San Rafael the general course of the creek is nearly
due east and west, whilst above the village the bed of the
stream runs in a northwesterly course.   The evidence tends
to show that at the date of the deeds, under which the
parties respectively claim, only that part of the stream
which lies below the village was generally called and known
as San Rafael Creek, whilst the same term was occasionally,
though not generally, applied to that portion of the stream
lying above the village.

These being the facts, it is our duty to ascertain, if prac-
ticable, what the parties to the deed meant by the phrase,
"thence running at right angles to said creek."   If we can
ascertain the intention, by interpreting the deed in the light
of the surrounding circumstances, it is our duty to give
effect to it if possible.   It is obviously impracticable to run
a line at right angles to a tortuous stream, except by first
establishing a straight line as a base for the right angle;
and this can only be done by ascertaining, and reducing to
a straight line, either the general course of the stream from
its source to its mouth, or that portion of the stream which

shall appear to have been within the contemplation of the parties at the time of the execution of the deed.

I am satisfied, from all the facts, that when these parties referred to the creek "running from San Rafael to the Bay of San Francisco," they intended only that portion of the stream which lies below the village, and had no reference to the stream above the village, which was not generally known or called by the same name, and which was, in fact, a running stream during only a portion of the year. This inference is strengthened by the fact that the stream is referred to in the deed as "the creek running from San Rafael to the Bay of San Francisco," which tends strongly to show that this portion of the creek only was in the minds of the parties. Assuming this to have been the fact, a straight line drawn from the head of the stream at San Rafael to its mouth would establish the general course of the creek; and this line, if protracted until a line drawn at right angles to it will pass through the beginning point of the survey, would establish the right angle called for in the deed, and determine the location of the first line of the survey. This method of locating a line called for in a deed is not free from objections, and is not to be commended in practice. In some cases it would be impracticable, owing to the difficulty of ascertaining with precision the sources of the stream, or determining with accuracy its general course. But in this case no such difficulties will arise. The stream is short, running almost due east and west, and its head at San Rafael can be easily ascertained, whilst it empties into the bay through a narrow mouth which can be readily identified.

I am, therefore, of the opinion that the base for the right angle, called for in the deed, can thus be established with reasonable precision. If the first line called for in the plaintiff's deed be located by this method, it will include a portion, and perhaps the whole, of the land in controversy. The plaintiff is, therefore, entitled to recover, unless the

premises in dispute are included within the deed from the common grantor, under which the defendants claim.

The first descriptive call in that deed commences at the same point called for in the plaintiff's deed, to wit: "At a point about one hundred yards below the mouth of San Rafael Creek, and running thence northwesterly, or at right angles with the said creek, to a point on top of the main ridge." The only variance between this call and that of the plaintiff's deed, consists in the words "*northwesterly or,*" which are added to the description in the defendants' deed. But there is no visible monument called for at the end of this line, to fix its location, and the term "northwesterly," employed in the deed, is less definite and certain than the call to run at right angles to the creek. It is true, that when the term "northerly," "northwesterly," "northeasterly," etc., are employed to designate a line, if there be nothing else in the deed to fix its location, these terms will be construed as equivalent to a call to run due north, due northwest, or northeast, as the case may be. But this construction is only resorted to to prevent a failure of the deed for a want of certainty in the location of the lines; and such a call must always yield to visible monuments, or to any other description of a line which locates it with reasonable certainty. As we have already seen, a line running at right angles to the creek can be located with certainty and precision; and if it shall be found that a line running due northwest from the beginning point is variant from a line running at right angles to the general course of the creek, to be ascertained by the method already indicated, the latter must prevail, as the more certain of the two descriptions. I am, therefore, of the opinion that a line running from the beginning point, at right angles to the general course of the creek from the Village of San Rafael to its mouth, to be determined in the manner above indicated, will be the proper dividing

line between the lands of plaintiff and those of the defendants.

Order denying a new trial reversed, and cause remanded for further proceedings, in accordance with this opinion.