Melville J. Jewett *vs.* Daniel W. Hussey.

Piscataquis. Opinion December 23, 1879.

*Deed—calls in. Easement. Adverse possession.*

</div>

Calls in a deed thus, "Thence by the road to Peter Staples' land, thence southerly by said Staples' land to J. Weymouth's land," are answered by running on the road to Peter Staples' land, thence southerly five and a half rods, thence at right angles westerly eleven rods, and thence at right angles southerly one hundred and fifty rods to Weymouth's land, if such is the correct description of the divisional line (or lines) between the land of the grantor and the land owned by Peter Staples.

An easement may be acquired by a use of land, the use being continued long enough, having its origin and continuance in a parol gift or grant. Any occupation or enjoyment of the land of another under a claim of ownership, is in a legal sense an usurpation of the right of the true owner, constituting an adverse possession.

On report.

Writ of entry dated February 6, 1878. Plea *nul disseizin* with brief statement.

1.   The defendant· says that plaintiff, never  at  any time had title to or was seized of the demanded premises, but that the same were during the  times  mentioned in  plaintiff's writ, ever  since, and still are owned by one William Gould, or by his heirs.

2.   That if the title was not in said Gould or his heirs as above stated, it was and is in defendant subject to the right of plaintiff to the use of a certain spring on the premises.

The questions presented are stated in the opinion.

*A. G. Lebroke*, for the plaintiff.

*J. Crosby*, for the defendant.

PETERS, J.   The question presented is this :  Are calls in a deed thus, "thence by the road to Peter Staples' land, thence southerly by said Staples' land to J. Weymouth's land," answered by running on the road to Peter Staples' land, thence running southerly five and a half rods, thence westerly eleven rods, and thence at right angles southerly one hundred and fifty rods to Weymouth's land, if such is the correct description of the divisional line (or lines) between the land of the grantor and the land owned by Peter Staples.   We have no doubt of it.

The second line would not be a continuous southerly-going line, as literally called for by the deed, but the land conveyed would adjoin Peter Staples' land at the road, and be bounded by his land all the way from the road to the end of the lots.   The monument called for is Peter Staples' land.   The general direction (southerly) corresponds with the call for most the distance of one hundred and sixty rods.

The defendants contend that the line (to go southerly) should commence at the road upon land in the possession (not in the ownership) of Peter Staples, making a straight line southerly, running for the first ten rods on land possessed by Staples, and for the remaining distance of one hundred and fifty rods on land which Staples owned.

We think the safer rule is, to adhere to the line marked by ownership rather than to the line marked by possession.   If parties commit mutual mistakes in drawing their deeds, a resort may be had to equity to correct them.   Possessory lines are usually

indefinite guides to go by. Besides, Staples had no exclusive possession of the nook or notch here in question. Our interpretation of the deed makes it convey neither more nor less land than the grantor owned when his deed was given. There is no reason to believe that he intended by his deed to convey any less land than he there owned. The point involved in the description in this deed has been settled in cases in this state heretofore. *Wiswell* v. *Marston,* 54 Maine, 270. *White* v. *Jones,* 67 Maine, 20.

Has the defendant an easement over and upon the land in dispute? . The case does not necessarily call for a decision of this question, but its discussion briefly may have the effect to prevent future litigation. The exact question is, whether an easement can be acquired by a possession or enjoyment that has its origin and continuance in parol license or consent. We think it can. It depends upon the nature of the consent or license given. It may or may not be. An easement by prescription is gained by an adverse possession, if the adverse possession continues long enough. But an adverse possession of land is not necessarily a hostile possession as against the true owner. It is enough that the occupant is seized in fact, and the owner is disseized. The occupier may obtain his seizin wrongfully or rightfully. It matters not whether he gets it as a purchaser or a trespasser. The word disseizin is used in different senses. Sometimes an act of disseizin is meant and sometimes a title by disseizin is meant by the use of the term. We are apt to suppose that an act of disseizin must be an invasion or usurpation of the true owner's right. In a strict legal sense it may be so, while sometimes in a popular sense it would not be so. Taking possession of land from the true owner without legal authority, is an invasion of his right, although he acquiesces in the act, not knowing that his right is invaded. For instance, A. gives to his son B. a farm by a paper not amounting to a deed. A. and B. both believe that the transaction makes a valid transfer of the land. B. occupies the land as his own precisely as he would and could have occupied it had he a strict legal conveyance. B. becomes seized in fact of the land by the consent of A., and B. occupies adversely to A. in a legal sense, and occupying the land in this way unmolested for

twenty years he becomes himself the absolute owner thereof. Here the adverse possession had its origin in permission. Had B. gone into possession, not under a supposed deed, but under a levy made against A. upon the land, the levy being void for some cause, in such case his possession would have been without permission. The principle is concisely and clearly stated and illustrated in the opinion in the case of *Sumner* v. *Stevens,* 6 Met. 337. In that case it was held that, if a son enters upon land under a parol gift thereof from his father, who owned the land, and has the sole and exclusive possession for twenty years, he acquires title thereby. Chief Justice Shaw there says : "Had the tenant simply shown an adverse and exclusive possession for twenty years, he would have shown that the owner had no right of entry, and that would have been a good defense to this action. Is it less so that the tenant entered under color of title ? A grant, sale or gift of land by parol is void by the statute. But when accompanied by an actual entry and possession, it manifests the intent of the donor to enter and take as owner, and not as tenant ; and it equally proves an admission on the part of the donor, that the possession is so taken. Such a possession is adverse. It would be the same if the grantor should enter under a deed not executed conformably to the statute, but which the parties, by mistake, believe good. The possession of such grantor or donor cannot, in strictness, be said to be held in subordination to the title of the legal owner. . . . The owner may reclaim and reassert his title, because he has not conveyed his estate according to law, and thus regain the possession ; but until he does this, by entry or action, the possession is adverse." The doctrine that a parol demise and exclusive occupation under it by the grantee may amount to an adverse possession that would transfer the title to land, was approved and applied in the case of *Webster* v. *Holland,* 58 Maine, 168.

So a person may, by gift or sale, dispose of an easement by parol, and the donee or vendee obtain a prescription thereby after the lapse of sufficient time. It must appear that the privilege was not used under a letting, or license, or in any way in subordination to the title of the legal owner. The distinction is, whether

I grant you a right over or upon my property to use as your own or as my own—as an enjoyment and privilege belonging to you or as belonging to me. The grantee or donee must accept and enjoy the use of the premises as his own, and because he claims it to be his own, and because the grantor sold or gave it to him to be his own as a perpetual thing. In *Arbuckle* v. *Ward,* 29 Vt. 43, it was held that the use of land originating in permission will not prevent it becoming a right by prescription, if continued long enough, if the permission was of a "perpetual or unlimited character." That case involved a construction of the rights of different persons to the privilege of a spring, the use of which had been granted under a verbal agreement, and presented the question very much as does paper A in the case at bar. Other authorities concur in this view of the question. *Ashley* v. *Ashley,* 4 Gray, 197. *Ripley* v. *Bates,* 110 Mass. 161. Washb. on Ease. c. 1, § 4, and cases there cited.

> *Judgment for demandant for the land; the judgment not to preclude the defendant from any easement (if any) he may have in or upon the locus.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and SYMONDS, JJ., concurred.