## WILLIAM SEGAR *vs.* GEORGE H. BABCOCK.

A deed conveyed land bounding it " thence northerly bounded westerly by land
.of Joseph H. Lewis . . . to point and place of beginning."
In trespass and ejectment involving the interpretation of this boundary descrip-
tion:
*Held*, that it meant bounded westerly on land owned by Lewis in fee, not land
over which he had an easement of way.
At the trial the defendant claimed that the description required a straight line
drawn in a northerly direction, that the description was ambiguous referring
either to land owned by Lewis or to land in his possession, and that this am-
biguity could be explained away by parol proof of the grantor's intention.
*Held*, that the defendant's claim.could not be sustained that the " land of " Lewis,
meaning land owned by Lewis, was a definite boundary, that there was no
ambiguity in the description and that parol evidence of intention was inad-
missible.

DEFENDANT's petition for a new trial.

*Providence, February* 18, 1893.    STINESS, J.    The plain-
tiff sued in trespass and ejectment for a piece of land, occu-
pied by the defendant as tenant under Samuel G. Babcock,
claiming title under a deed from the heirs of Rowse Babcock,
dated October 1, 1887, conveying to him the Dixon House
estate, so called, in Westerly.    At that time a solid brick wall
stood upon the easterly line of the piece of land in question,
separating it from the hotel estate, but said piece of land was
owned by the plaintiff's grantors, at the time of their deed to
him, subject to a right of way over it, previously granted by
deed to Joseph H. Lewis, a predecessor in title of the defend-
ant.    On the west of said piece of land was a lot which said
Lewis owned in fee.    The description in the plaintiff's deed,
so far as it relates to this case, is as follows:  " Thence
northerly bounded westerly by land of Joseph H. Lewis, land
of Edward W. Babcock and land of the grantors to point and
place of beginning."    If this is a straight line from point to
point, it excludes the land sued for and the plaintiff has no
title to it; if it goes to the land owned by Joseph H. Lewis,
by the necessary angles, the plaintiff has title and has the
right to recover.

The plaintiff claimed that the words " bounded westerly by
the land of Joseph H. Lewis," should be construed to mean

land owned by Lewis in fee; while the defendant claimed that the course being northerly the line should be straight; and, also that the deed being ambiguous, because it might refer to land in possession of Lewis as well as to land owned by him, the intention of the parties could be proved by parol. The court below construed the deed to carry all the grantors' land up to the land owned by Lewis and refused to admit parol evidence of intention, rendering judgment for the plaintiff. The defendant now petitions for a new trial upon the ground that these rulings were erroneous.

The line referred to as "northerly" does not run due north but northeasterly. Evidently then it was only used as a line of general direction. Such a line must always yield to a visible monument or to any other description which locates it with reasonable certainty. *Irwin* v. *Towne*, 42 Cal. 326; *Garvin* v. *Dean*, 115 Mass. 577; *Cunningham* v. *Curtis*, 57 N. H. 157; *Brandt* v. *Ogden*, 1 Johns. Rep. 156; 2 Devlin on Deeds, 1035; 3 Washburn on Real Property, 433. The definite and controlling boundary in this deed is the land of Lewis. If the line is to follow the land owned by him, its general direction for the greater part of the way will still be northerly. The use of this word does not necessarily call for a straight line. The boundary is the land of Lewis and that raises the principal question in this case, whether the phrase means land belonging to him, or land in which he had simply an easement. In *Crosby* v. *Parker*, 4 Mass. 110, this question arose. There land had been described in a conveyance to A. as beginning at a stake and stones on B.'s land. At the time B. owned land whose corner was so marked and had contracted to purchase another piece of land adjoining, whose corner was also marked by a stake and stones. This last lot he occupied as his own and had paid for it but he had received no conveyance of it. The trial judge instructed the jury that by legal construction of the deed the boundary was at land *owned* by B. and not at land *occupied* by him, and this direction was sustained on a petition for a new trial, upon the ground that it was all the land of which he had any title on record, by which the boundaries could be ascertained,

and all the land which the grantors could contemplate as B.'s land. The same rule was followed in *Cornell* v. *Jackson*, 9 Metc. 150; *Cleaveland* v. *Flagg*, 4 Cush. 76; *Sparhawk* v. *Bagg*, 16 Gray, 583. In *Cleaveland* v. *Flagg*, a fence had been erected on what was supposed to be a dividing line. But Shaw, C. J., said: "Here no fence was alluded to in the deed as a monument. The fence was not set up with a view to make it a monument, and there was no uncertainty respecting the true line. It appears quite certain that H. (the grantor) owned up to B.'s true line notwithstanding the fence; and if he did, we think it is beyond doubt that he intended to convey it; indeed such is the direct effect of the words in his deed." In *Jewett* v. *Hussey*, 70 Me. 433, the same rule is followed, upon the ground that it is safer to adhere to the line marked by ownership than to the line marked by possession, which is an indefinite guide. See also *Powers* v. *Jackson*, 50 Cal. 429.

The plain meaning of the words "land of," is land *belonging to* or *owned by* the person named. It is hardly conceivable that men would use these words, either colloquially or technically, in relation to land over which one simply had an easement of way. The description in the deed therefore is definite and unambiguous and parol evidence cannot be admitted to give it a different meaning. *Ames* v. *Hilton*, 70 Me. 36; *Miles* v. *Barrows*, 122 Mass. 579.

The cases cited by the defendant do not controvert this rule. Aside from those relating to contracts, they all agree that references to monuments, which are certain, must control in the construction of a deed as the surest indication of the intention of the parties and that resort can be had to parol testimony only when such monuments are uncertain or ambiguous in applying the deed to the land. Thus, *Atkinson's Lessee* v. *Cummins*, 9 How. U. S. 479; *Owen* v. *Bartholomew*, 9 Pick. 520; *Stone* v. *Clark*, 1 Metc. 378; *Frost* v. *Spaulding*, 19 Pick. 445; *Clark* v. *Munyan*, 22 Pick. 410; and *Macdonald* v. *Morrill*, 154 Mass. 270, were cases where such ambiguity was found. In *Makepeace* v. *Bancroft*, 12 Mass. 469, a monument was referred to in a deed and after-

wards erected.   In some of these cases the boundary was on land of another but the line of such boundary was not certain, as in the case before us, and hence parol evidence became admissible to show its location.   In *Cunningham* v. *Curtis*, 57 N. H. 157, the description was, by distance, to land of Hough. Before the title passed a strip was sold to Hough, which shortened the distance, but, in an action of covenant, the court construed the deed to go only to the true line, which was taken as a monument.   The case of *Smith* v. *Negbauer*, 42 N. J. Law, 305, comes closer to the case at bar. There the fences of a lot were taken as visible monuments although not referred to in the deed.   But that was an action for breach of covenant in which the plaintiff saw the fences before purchasing and did not think the land extended beyond them.   The court labored to find an ambiguity in the deed, in the use of the words "more or less" and then held that parol evidence was admissible to explain the contract of the parties.   We think the case can hardly be considered as an authority against the general rule above stated.   It is claimed in this case that the solid wall was a visible monument and that the plaintiff knew that he was not buying the land beyond it.   All this may be true, but the wall was not referred to in the deed and the question here is purely one of construction.   The boundary of the land of Lewis is plain. There is no uncertainty about the location of this boundary. If it was intended to make the wall the line it would have been most natural and easy to say so.   To substitute it for the boundary named in the description would be to change the deed and not to construe it.   The deed is explicit and admits of but one construction.   It was correctly construed in the court below to run to the line of the land owned by Lewis and, as there was no controversy as to this line, parol evidence to show that the parties to the deed contemplated a different line was properly excluded.

*Petition dismissed.*

*Albert B. Crafts*, for plaintiff.
*James Tillinghast & Charles Perrin*, for defendant.