APPEAL OF THE CITY OF SCRANTON.

[JOHN GOULDEN v. SCRANTON CITY.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF
LACKAWANNA COUNTY, IN EQUITY.

Argued February 20, 1888—Decided October 1, 1888.

A court of equity will not restrain a municipality from the reconstruction
and enlargement of a culvert across a street, upon the bill of a property
owner alleging that the proposed work will cause injury to his lot by
the increased force and volume of water cast upon it.

Before GORDON, C. J., PAXSON, STERRETT and GREEN, JJ.;
TRUNKEY, CLARK and WILLIAMS, JJ., absent.

No. 254 January Term 1887, Sup. Ct.; court below, No. 8
October Term 1885, C. P. in Equity.

On August 12, 1885, John Goulden and Bridget Goulden
filed a bill in equity against the city of Scranton and Martin
Dwyer to restrain the reconstruction and enlargement of a
culvert across Railroad Avenue, in said city. A preliminary
injunction was awarded on the filing of the bill, and on hear-
ing of a motion, on September 28, 1885, the injunction was
continued. An answer having been filed, *Mr. Henry A.
Knapp*, was appointed examiner and master, and his report,
showing the pleadings, the facts and questions of the case, was
filed on June 26, 1886, and was as follows, to wit:

The complainants in their bill filed in this court August 12,
1885, allege that they are citizens and taxpayers of the city
of Scranton, and the owners of a lot of land in said city fifty
feet wide and one hundred and fifty feet deep, improved with
a two story frame dwelling; that since they have been the
owners of the said lot of land, the city of Scranton has con-
structed a culvert across the street in front of the same to
conduct surface water from certain portions of the city upon
their lot, thus damaging and washing away part of the lot;
that by a system of drainage adopted by the city, consisting

of cross gutters upon various streets, surface water is conducted to the said culvert which would naturally find its outlet at other places; that by reason of the increased volume of water consequent upon the system of drainage mentioned, the culvert which has heretofore been built is now inadequate to conduct the water across the street, in front of plaintiffs' property, and the city of Scranton is about to construct a new one of larger dimensions, and have awarded to Martin Dwyer a contract for that purpose; that the new culvert, if allowed to be built as it is proposed by defendants to build it, will throw the water upon complainants' lot at a different angle or from a different direction than the old and with greater force, and prove much more damaging to complainants' lot than they have heretofore suffered; complainants therefore pray that defendants may be enjoined from proceeding to construct the new culvert.

The answer of the defendants sets up the defence that the construction of the old culvert and the proposed construction of the new culvert is done in pursuance of the discretionary power and authority of the city councils to provide for and make the proper repairs upon streets and highways of the city. It denies that the property of complainants will suffer greater damage from the water flowing through the new culvert than it would suffer from water flowing through the old culvert; and denies that more water has been turned upon plaintiffs' land than would naturally run there, except so far as has been unavoidably caused by the necessary grading and improving of the streets of the city.

A preliminary injunction was awarded as prayed for, which upon a subsequent hearing before ARCHBALD, J., was continued with this modification, that the defendants shall have the right to rebuild or restore, at the point in question, a culvert of the same dimensions, form and direction as the old culvert and no different or larger.

From the testimony taken in the cause the master finds the facts as follows:

1. In 1873 complainants purchased a lot of land in the sixth ward of the city of Scranton, designated as Lot No. 3, in Block No. 41, upon John Heerman's map of South Hyde Park. Said lot is fifty feet wide in front on Railroad Avenue, by one

Master's Report.

hundred feet in depth, and is improved with a dwelling house wherein complainants have resided since they have been the owners of said lot.

2. Said lot is located upon the line of a natural course of surface drainage. For some distance above complainants' lot this line is marked by a ravine, varying in size, in which formerly flowed a small stream, kept alive by springs, failed now by reason of mining operations beneath the surface. For the past fifteen years surface water alone has run in this ravine, usually but a small stream, occasionally in dry times none at all, and in heavy rains a torrent.

3. Some years ago, it does not appear just when, the city of Scranton built a culvert across Railroad Avenue, in front of complainants' lot and the lot of McDermott, adjoining, through which culvert the water has since flowed, coming out of the culvert upon the line between complainants and McDermott, and, after following this line for twenty or thirty feet, flowing across complainants' lot. This culvert was three feet wide, nearly four feet high, and had a bend or elbow in the middle of it. When built it was as large as was necessary to conduct the water across Railroad Avenue.

4. For several years past the water flowing in this ravine has increased in amount at times of heavy rains, owing largely to the increased area of territory which has been drained by the city into the ravine ; upon Hampton and Eynon streets, in the vicinity of Eighth and Ninth streets, large cross gutters have been constructed, intercepting surface water flowing down Hampton and Eynon streets and turning it down Eighth and Ninth streets, towards this ravine. If this water were not intercepted in the manner stated, it would follow Hampton and Eynon streets and find its outlet without coming to this ravine.

5. By reason of the increase of water mentioned in the fourth finding of fact the culvert across Railroad Avenue mentioned in the third finding of fact, has recently been found too small to conduct the water which pours down this ravine at times of heavy rains. The culvert has also fallen somewhat out of repair, and more than a year ago the city took measures to have it repaired and enlarged. .It was, however, decided that it would be more economical to build a new one, and

plans were drawn for that purpose, and the contract for building the same was awarded to Martin Dwyer. The proposed new culvert is five feet high and five feet wide, and has no bend or elbow in it, but crosses Railroad Avenue diagonally, at an angle of about forty-five degrees, thus ejecting its water more directly upon complainants' lot than was done by the old culvert.

6. The complainants are likely to sustain greater damage from the water if the proposed new culvert is built, than they have sustained in the past.

The complainants pray for an injunction restraining the city authorities and the contractor from further prosecuting the work of putting in the new culvert as described. Has a court of equity the power to restrain the defendants as prayed for, and having it, have complainants shown such a case as would justify its exercise?

It may first be observed that the allegations of the complainants' bill have been substantially established. The case shown by the proofs is not weaker than the case as it stood when the preliminary injunction was continued by this court. In the opinion delivered at that time it was said: " By the system of gutters established by the defendant corporation in that part of the city, additional surface waters are now gathered together and caused to discharge themselves above the plaintiffs into the course of this surface drainage. In doing this the city authorities have diverted, at several points, water from the courses which it would naturally have taken, and it is to meet this increased volume of water that the old culvert is now being supplanted by the present larger one. A city cannot so gather together surface waters and belch them upon a person's land. Injunction will lie to restrain such action: Gould on Waters, § 272; West Orange Tp. v. Field, 37 N. J. Eq. 600; s. c. 2 Am. and Eng. Corp. C. 629–633; Martin v. Jett, 32 Amer. D. 120 and notes; Dillon on Mun. Corp., § 799, ad finem. This is not directing the city authorities how they shall arrange the surface drainage, but simply that they shall not do it to the extent that it unlawfully infringes upon individual rights."

In the case of West Orange Tp. v. Field, cited by Judge Archbald, supra, a case very much like this, the relief prayed

for and granted was much greater than that asked here, being no less than an injunction enjoining the municipality from continuing to discharge the drainage of certain streets upon complainant's lands. It will be noticed that the doctrine enunciated in that case is, that the municipality has no right by artificial constructions in the streets to divert the water from where it would otherwise flow and thereby collect it and cast it upon complainants' lands, although, if in the ordinary course of grading streets, more surface water is caused to flow upon complainants' lot than flowed there when the streets were not graded, the complainants are without remedy. Martin v. Jett, a Louisiana case reported in 32 Amer. D. 120, is important chiefly for the copious and exhaustive note appended thereto, in which the editor has gathered the substance of the law from many states upon the subject of surface water and watercourses. The general doctrine is that the servient owner is compelled to submit to such water as naturally flows upon his tenement, but that this servitude must not be augmented or made more burdensome by the industry of man, and this is the settled law of Pennsylvania: Cauffman v. Griesemer, 26 Pa. 407. In Noonan v. City of Albany, 79 N. Y. 470, the court says: "A municipal corporation has no greater right than an individual to collect the surface water from its lands or streets into an artificial channel and discharge it upon the lands of another, nor has it any immunity from legal responsibility for creating or maintaining nuisances."

On behalf of the defendants, it is contended that a complete legal remedy for any damage complainants may suffer is furnished by the act of May 1, 1876, P. L. 86, entitled "An act providing for the appraisement, collection and payment of damages to private property by the grading of streets or alleys in cities other than those of the first, second and fifth classes, and authorizing the occupation of private property for the purposes of slopes or embankments in the improvement of streets or alleys therein." In the opinion of the master this act does not meet the case presented here. It only purports to provide a remedy for persons injured by the taking or damage to private property by reason of the grading of any street or alley within the corporate limits. That the increase of water flowing upon complainants' lot is not caused by grading, but is the result of

the gutters constructed in the streets, is distinctly shown. That the effect of these gutters is to divert water from other sources, and pour it upon complainants' lot, is found as matter of fact. It may be that the amount so diverted is not large, except in times of violent storms, yet the fact remains that the culvert, as originally built, was sufficient for the purpose and now is found too small, and, taken with the other facts that the increase of the water followed closely upon the construction of the large cross gutters, and that many old residents of the neighborhood of Hampton and Eynon streets testify distinctly that surface water, which formerly pursued the course of these streets, is now diverted into this ravine, leaves little doubt as to the reason for the necessity of the larger culvert. We have also the authority of the city engineer for the fact that no grading has been done in that neighborhood for several years.

In Dillon on Municipal Corporations, § 799, it is said " It is possible there may be no middle ground, but we are unable to assent to the doctrine that by reason of their control over streets and the power to grade and improve them, the corporate authorities have the legal right intentionally to divert the water therefrom as a mode of protecting the streets, and discharging it by artificial means, in increased quantities and with collected force and destructiveness, upon the property, perhaps improved and occupied, of the adjoining owner."

The ravine in question here is not now in legal contemplation a natural water-course. It is true, a small stream once flowed there, fed by springs, but it is also true that upon failure of the springs this stream failed. The city has not the right to use its course for general drainage purposes, without compensation to persons injured. If surface water can be artificially led thereto, the same principle would also authorize its being made the outlet of sewers and drains, and if the water of Hampton and Eynon streets can be diverted to this course, what can be urged to prevent its being made the medium to carry away the filth and refuse of the whole city if convenience should so dictate ? It is doubtless true, that it may be inconvenient and expensive to allow the surface water of Hampton and Eynon streets to follow its natural course to the Lackawanna river ; but this consideration should not be allowed to interfere with individual rights. It is in evidence that the

Opinion of Court below.

increased flow of water to complainants' lot, coupled with the increased force and different direction, which by the contemplated culvert it will be made to strike thereon, will have a tendency to wash the lot, undermine it, and cause damage. The city engineer testified that a retaining wall could be built which would entirely protect complainants from damage for the sum of two hundred dollars. In the opinion of the master to do less than this would be an injustice to complainants; and from such injustice this court of equity should afford them protection.

It is recommended that a decree be entered in this case, making perpetual the injunction issued August 12, 1885, as modified by the order of September 28, 1885, with leave to the defendant city to show by petition and affidavit that she has built or offered to build a sufficient retaining wall for the entire protection of complainants from the damage complained of in their bill, and thereupon to move for the dissolution of the injunction.

On July 10, 1886, the master made a supplemental report upon the exceptions filed by the defendants, setting out that he had re-examined the subjects covered thereby, and, as in his opinion the fifth exception was well founded, he amended his report by adding the following finding of fact:

The culvert across Railroad avenue, sought to be enjoined by this proceeding was authorized by ordinance duly passed, and a contract had been entered into between the city of Scranton and Martin Dwyer for the construction of said culvert.

The other exceptions filed having been dismissed, and then renewed in court, on August 30, 1886, the court, ARCHBALD, J., filed the following decree and order:

The constitution of this state provides: " Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction:" § 8, article XVI. By this provision compensation for consequential, as well as other

damages, is enjoined: Pusey v. Allegheny City, 98 Pa. 522; Reading v. Althouse, 93 Pa. 400. The exercise of any powers by municipal or other corporations, is subject to this injunction of the constitution.

There can be no question in general of the power of cities to adopt such a system of surface drainage as they see fit, and in the exercise of their discretion in this regard they will not be interfered with by the courts. The only restriction upon this is, that in so doing they must not invade private rights without first providing just compensation for the injury likely to be done. Without this, such acts are contrary to the fundamental law of the land, and it is the duty of the courts to restrain them. It is idle, therefore, to suggest that the only remedy to the plaintiffs for the injuries complained of is an action at law for their damages. Equity does not wait until an injury has been done before undertaking to redress it. One of the most beneficial of its powers is to prevent an injury which is imminent. I do not mean to say that every trifling injury may thus be made the concern of the court. There may be those which are so doubtful in their character, and so inconsiderable in their extent, that they can be well left to a court of law to settle. But the results to the complainants from the acts of the defendants in this case, are not so.

The facts clearly show serious prospective damage to them if this culvert be completed as it has been begun. It may be that by the cross gutters upon Eynon and Hampton streets no more water is turned into this water-course, than falls within the basin which it naturally drains, but by the means employed the discharge of such water is greatly accelerated, and thrown against the plaintiffs' lot, with far greater volume and force. This has, in fact, necessitated the enlarging and rebuilding of the culvert in question. The old culvert would not let the increased volume of water through it, upon the occasion of any heavy rain. If the city is allowed to complete this work, the whole body of this water will be let down upon the plaintiffs with a rush, instead of being held back as it now is, and only discharged upon them by degrees.

Moreover, not only is the new culvert to be enlarged, but it crosses the roadway so as to throw the water more directly against the plaintiffs' lot by an angle of about ten or fifteen

Arguments.

degrees, and with the increased force and volume of water, and the changed direction, it is well claimed, that there is serious danger that plaintiffs' house and lot may be washed away. It is according to the well known action of water that, being even slightly diverted from one side of its channel to the other, it will hollow out the opposite bank, and finally make for itself a tortuous and meandering course. The prospective damage to plaintiffs is thus neither conjectural nor inconsiderable. It is, therefore, the duty of the court to protect against the acts of defendants by which such damage will be caused, until just compensation has been paid or secured.

The exceptions to the report of the master are overruled and the report adopted, except as to his recommendations in regard to building a retaining wall to protect the plaintiffs' property. I do not think I can direct specifically how compensation shall be made to the plaintiffs, as this, in effect, would be doing, but only that the injunction be made permanent until just compensation, whatever that may be, shall be secured or paid.

Let a decree be drawn, permanently enjoining the defendants or either of them from further constructing or proceeding with the culvert in question, except as provided in the order continuing the preliminary injunction in this case, until such time as just compensation shall be paid or secured unto the said plaintiffs for the injury complained of in the bill, and let the city of Scranton, defendant, pay the costs.

A final decree having been signed in accordance with the foregoing opinion and order, the defendant city took this appeal specifying that the court erred:

1. In deciding a question not raised by the bill and in granting an injunction not prayed for, there being no allegation that defendants were taking or injuring property without making or securing compensation and no prayer for injunction on that ground.

2. In not dismissing plaintiffs' bill for want of jurisdiction, there being a specific and adequate remedy at law.

3. In granting and continuing the injunction.

*Mr. I. H. Burns*, for the appellant:

1. It is a well settled principle of construction, that a court

will not go outside the case to decide a question that is not raised. In Pusey v. Allegheny City, 98 Pa. 526, Justice GOR-DON says: "No such question appears to have been raised in the court below, and we cannot agree to discuss what is not before us." The first time the point was raised, that the city was taking property without making or securing compensation, was by the opinion of the court below. How the court ascertained the facts on which the ruling is founded does not appear. We urge that it was the duty of the court to decide the case that was submitted.

2. This is not the case of a new work, such as the laying out of a new street, or such cutting or filling as might change the grade of a street. It is simply the ordinary repair of a culvert, for the safety and convenience of the public, and such work as the city must do to keep its streets in repair. It does not increase or decrease the flow of the water, any more than does the construction of a bridge over a river. Even an injunction cannot prevent water from running down hill. And a court of equity will not restrain a municipal corporation from doing acts not contrary to law. Moreover, if the plaintiff is injured in any way by the work, he has a specific statutory remedy by the act of May 1, 1876, P. L. 86, and when such a remedy is provided it must be pursued.

*Mr. Louis A. Watres*, for the appellees:

The question presented is, will a court of equity permit a municipality, after having by a system of drainage and cross gutters gathered from a large territory surface water that would find its outlet in other directions, if allowed to follow the grade of the streets, build in place of an old culvert that opened on complainants' land, a new one of different construction, of larger size, and at such a different angle as to bring the larger force of surface water thus gathered, squarely against complainants' land, if by such force the damage would be irreparable, continuous and constantly recurring? A municipality has no right, by the construction of artificial drains in streets, to divert the flow of water from where it otherwise would flow, and thereby collect it and cast it upon a citizen's property. An injunction will lie to restrain such action: Gould on Water Courses, § 272; West Orange Tp. v. Field, 37 N. J. Eq. 60;

Opinion of the Court.

s. c. 2 Am. & E. Corp. C. 629–633; Dillon, Mun. Corp. § 279; Noonan v. Albany, 79 N. Y. 470 (35 Amer. R. 540); 1 Story Eq. J., 925–6–7. The act of May 1, 1876, P. L. 86, is inapplicable. Its purpose, fully set forth in its title, is, "the appraisement, collection and payment of damages to private property by the grading of streets or alleys, etc., and authorizing the appropriation of private property for the purposes of slopes and embankments in the improvement of streets and alleys."

OPINION, MR. JUSTICE GREEN:

The master finds that the plaintiffs' lot is located upon the line of a natural course of surface drainage; that, for some distance above the lot, this line is marked by a ravine in which a small stream formerly flowed, kept alive by springs which have since failed; but that for fifteen years past the surface water has run in this ravine, usually a small stream, occasionally dry, and in heavy rains a torrent. It is apparent that if no culvert had been built across Railroad Avenue for this water to go through, the ravine would have continued open, and all the water that came into it would have flowed through it and in time of flood would have been precipitated upon the plaintiffs' land without restriction. If the culvert were taken away now, the same result would follow. But the preservation of the culvert is presumably necessary in order to sustain the street above it. When it was built, it might as easily have been built five feet wide and five feet high, as three feet wide and three feet high, but the latter dimensions being supposed sufficient were adopted. It appears now they are not sufficient and therefore in rebuilding the culvert it is made of the larger dimensions.

It seems rather singular that an injunction should be awarded against such an exercise of corporate authority as this. The purpose of the increased size of the culvert manifestly is to carry off the water in time of flood, and thus prevent it from damming up and overflowing the adjacent territory. Certainly this is an entirely legitimate purpose, to be encouraged rather than repressed or restrained. As the whole of the water must have gone down this natural water course if it had remained in a state of nature, it is difficult to understand why a miti-

gated flow through a restricted limit should be the subject of a restraining injunction. The argument that it was for fifteen years carried through a still more limited channel and therefore *that* limit cannot now be exceeded, is entirely without force. The three feet limit was not a natural one and the case therefore is not one of a proposed increase in the size of the natural channel, but it was an artificial channel, found now to be insufficient in size and therefore necessarily to be enlarged, but still much less than the natural channel.

The authorities cited in the opinion of the court and in the argument for the appellees, which hold that surface waters cannot be gathered together and cast upon a citizen's land even by a municipality, or that a natural channel cannot be increased in size and made to carry an increased flowage, are inapplicable. Having said this much, it is only necessary to add that the diversion of an increased surface flow into the natural drain or ravine, more than was accustomed to find its outlet in that way, is not the subject of complaint in the plaintiffs' bill and no relief is asked against the defendant on that ground. The decree made by the court below has nothing to rest upon in the pleadings and cannot be sustained. If the plaintiffs desire to obtain redress for an increased flowage of surface water into the natural drain by artificial means, let them proceed in some appropriate form for such an injury. They have not done so in the present proceedings.

Decree reversed, and bill dismissed at the cost of the appellees.