OZRO D. CASTNER, Assignee, in Equity,

*vs.*

TWITCHELL–CHAMPLIN COMPANY, and others.

Lincoln.     Opinion May 17, 1898.

*Corporations. Meetings. Quorum. Insolvency. Jurisdiction. Equity. Interpleader.*

The court of insolvency has sole jurisdiction, in the first instance, over the distribution of funds in the hands of an assignee in insolvency; and this court has neither original nor concurrent jurisdiction over the same.

*Held;* that a plaintiff, as assignee in insolvency, who is himself a claimant of a fund in his possession cannot be awarded an interpleader.

A sale and conveyance of corporate property duly authorized by the stockholders will be sustained and declared valid.

At the organization of a corporation, the capital stock was fixed at $30,000, and was divided into shares of $50 each. Subsequently the corporation adopted the following by-law: " At all legal meetings of the company there must be present at least one-third of the stockholders holding at least one-third of the shares of stock, to constitute a quorum to do business." Only 96 shares of stock were ever subscribed for or issued.

*Held;* that the presence at a stockholders' meeting of one-third of the stockholders in number holding at least one-third of the 96 shares issued or subscribed for, was sufficient to constitute a quorum; and that a conveyance authorized at such a meeting was valid.

*Ellsworth Manufacturing Co.* v. *Faunce*, 79 Maine, 440, distinguished; and, in so far as it is in conflict with the opinion in this case, it is overruled.

See *Miller* v. *Kenniston*, 86 Maine, 550; *Miller* v. *Waldoboro Packing Co.*, 88 Maine, 605.

ON REPORT.

Bill of interpleader, heard on bill, demurrers, answers and documentary evidence.

The material allegations of the plaintiff's bill are as follows:

First. That the Waldoboro Packing Company, prior to its insolvency, was the owner in fee simple of certain real estate, situate in said Waldoboro, .... and that thereafterwards, and prior to its being adjudged an insolvent debtor by the court of

insolvency in said Lincoln county, by its deeds executed under its seal and duly delivered, [dated December 10, 1890] conveyed to the said W. A. Luce, one of the defendants, its entire plant, consisting of the first named lot with the factory thereon, and to the said E. R. White the other lot . . . . the consideration for which real estate formed the whole or substantially the whole of its assets at the time of its assignment in insolvency.

Second.    That said insolvent corporation was adjudged to be such on the 6th day of September A. D. 1892, whereby under the assignment of the judge, pursuant to the same, its entire assets came into the hands of S. W. Jackson, Esq., for administration, and upon his decease to the hands of the complainant as his successor, to conclude the administration of said insolvent estate; whereby the complainant received the sum of two thousand six hundred and thirty-five dollars and eighty-two cents for administration and distribution.

Third.    Your orator further shows to the court that the said Sarah F. Miller, one of the general creditors of said insolvent corporation as payee and holder of one of its promissory notes, brought an action of assumpsit on the same against the Waldoboro Packing Company, wherein she obtained judgment against said company and execution thereon for the sum of two thousand and ninety-seven dollars and sixteen cents and costs taxed at forty-three dollars and sixty-eight cents, notwithstanding she had likewise proved the same claim against the insolvent debtor in the insolvency court, both of which it is admitted she might lawfully do; but upon which execution, however, the said Mrs. Miller in her lifetime began a levy upon said factory plant, which it is proposed and intended to renew or complete, it being claimed by her, and since her decease by her administrator, as your orator understands, that the deed of conveyance to Mr. Luce above referred to was void by reason of certain illegalities in the proceedings of said corporation, prior to its act of insolvency, touching said property.

And it is pretended and claimed by the owner and holder of said execution that he can receive his dividend from the court of insol-

vency in distribution of said insolvent estate, and then levy upon the same real estate, from the sale of which the funds held by the assignee for distribution were received, for the payment and satisfaction of the remainder of the amount named in said execution. And the said Eliza U., Hattie C. and William A. Luce, who are parties to this process by reason of their being heirs of William H. Luce, who was guarantor of title to the Twitchell–Champlin Company in a deed of the same real estate by him to it, as your orator believes, pretend and claim that if said levy is sustained, they can follow the funds in the hands and possession of the assignee as a trust fund which can be reached by them in specie, and to which they are entitled by reason of the failure of the consideration for which the said Luce was induced to pay said fund to the insolvent company, claiming a title thereto in equity superior and paramount to that of the general creditors of the insolvency court; and claiming that at all events their contingent claim should be equitably adjusted before a final distribution.

Your orator has hoped that he would be able to distribute the funds in his hands without embarrassment, and that no dispute could have arisen concerning the same, and that no suit would be commenced against any of the parties with respect to the same. But now so it is, the above defendants claim to be entitled to said funds on different grounds and by different titles, and processes are now either pending, or imminent, for the enforcement of their respective rights or claims. Your orator says that under the circumstances aforesaid he is in danger of being harrassed on account of the diverse claims to said fund and cannot safely pay out and distribute the same without the aid of the court in equity.

When this cause came on to be heard in the court below, at the April Rules, 1897, it was reported by agreement of the parties to the law court, to be heard upon bill, answers, demurrer and such documentary evidence as either party should offer and file with the clerk. The parties further stipulated that if the court should decide that the defendants should interplead, " then it is desired by the parties and they request the law court to finally decide and determine all rights of the respective parties in relation to the

subject matter of the cause and to order such final decrees in respect thereto as the rights of the parties may require."

The defendant Twitchell–Champlin Company, the present owner of the land, joined in this request " only in the event it shall be first determined by the law court that it is subject to have its legal right to the title of said real estate drawn into equity, in this way, and determined by decree in equity, instead of by judgment by law; and only in case, in the judgment of the law court, all its legal rights of title and remedy, as aforesaid, will be fully protected by such decree."

*O. D. Castner,* for plaintiff.

It is always the trustee's privilege to ask and receive of the court having proper jurisdiction, directions as to the policy he shall pursue in the conduct of the trust and as to the construction to be placed upon the instrument of trust, under which he acts; and in all questions of doubt it is his duty to make this application to the court. *Treadwell* v. *Cordis,* 5 Gray, 341.

Where an insolvent debtor assigns his property to trustees for the benefit of his creditors, and various questions of difficulty arise from the conflicting claims of creditors, which it might not be safe for the trustees to decide without the directions of the court, they will be entitled to such directions; and they will not be obliged to wait until they are sued by the creditors, but may file a bill for the purpose of obtaining the same. *Dimmock* v. *Bixby,* 20 Pick. 368.

Although a bill of interpleader, strictly so called, lies only where the party applying is a stakeholder only and claims no interest in the subject matter, there are many cases where a bill in the nature of a bill of interpleader will lie by a party in interest to ascertain and establish his own rights, where there are other conflicting rights between third persons. *Stevens* v. *Warren,* 101 Mass. 564.

*T. P. Pierce,* for heirs of W. H. Luce.

The by-laws of a private corporation bind the members only, by virtue of their assent, and do not affect third parties. *State* v. *Overton,* 34 N. J. L. 440.

Counsel also cited: *Drake* v. *Hudson River R. R.* 7 Barb. 508; Boone, Corp. § 55; 1 Thomp. Corp. § 359; Morawetz, Corp. § 370; *Mellen* v. *Whipple,* 1 Gray, 317; *Field* v. *Crawford,* 6 Gray, 116; *Dow* v. *Clark,* 7 Gray, 198; *Hackensack Water Co.* v. *DeKay,* 36 N. J. Eq. 560; Cook, Stock, etc., § 725; Angel & Ames, Corp. § 397; Beach, Corp. § 322; *Bank* v. *Smith,* 19 Johns. 115; *Ins. Co.* v. *Keyser,* 32 N. H. 313; *Campbell* v. *Ins. Co.,* 37 N. H. 35 (72 Am. Dec. 324); *Fay* v. *Noble,* 12 Cush. 1; *Trustees* v. *Flint,* 13 Met. 543; *Worcester* v. *Bridge Co.,* 7 Gray, 457; *Flint* v. *Pierce,* 99 Mass. 68.

*J. W. Symonds, D. W. Snow, and C. S. Cook,* for Twitchell–Champlin Co.

This defendant is not properly a party to these proceedings. It acquired its title to the real estate under a warranty deed from William H. Luce to whom it paid the consideration therefor. No part of this consideration is now in the hands of the plaintiff or involved in these proceedings. This defendant looks, and must look, to its grantor for any failure of title to the real estate described in said deed, and not to the Waldoboro Packing Company.

This defendant's title to the real estate cannot be brought into equity by these proceedings. The parties interested or claiming to be interested in such real estate have a full, adequate and complete remedy at law. *Robinson* v. *Robinson,* 73 Maine, 170; *Gamage* v. *Harris,* 79 Maine, 531, 536; *Boardman* v. *Jackson,* 119 Mass. 161; *White* v. *Thayer,* 121 Mass. 226; *Russell* v. *Barstow,* 144 Mass. 130; *Payton* v. *Rose,* 41 Mo. 257.

The deed from the Waldoboro Packing Company to William A. Luce being signed by the president of the company, under the seal of the company "in pursuance of the by-laws and vote of said company" is the duly executed deed of said company, and said Luce had the right to take such deed as and for the deed of the company, upon payment of the consideration named therein and by virtue thereof to pass title to said William H. Luce. *McDaniels* v. *Flower Brook Mfg. Co.,* 22 Vt. 274.

On its face the deed purports to be the deed of the Waldoboro Packing Company. It is under its seal, and is signed by its chief

executive officer, thereto authorized its by-laws and vote of its stockholders. It is, therefore, presumptively the deed of the Waldoboro Packing Company, and the grantee had the right to so accept it. *Goodnow* v. *Oakley*, 68 Iowa, 25.

So far as W. A. Luce was concerned, the vote and the record of the stockholders were conclusive as to the authority of the president to execute the deed, and was sufficient assurance to the grantee named therein, that he assumed no risk in accepting it. *Whiting* v. *Wellington*, 10 Fed. Rep. 810.

The legality of the authority of the president to execute the deed as shown by the record is to be presumed. *Mussey* v. *White*, 3 Maine, 290; *Blanchard* v. *Dow*, 32 Maine, 557.

If there was a by-law limiting this apparent authority of the president, the grantee in this deed was not bound in the absence of the actual or constructive notice thereof, and was not bound at his peril to ascertain whether such a by-law had been complied with. Such a by-law was merely a provision for the internal government of the corporation, and the grantee had the right to presume due compliance in the absence of notice to the contrary.

The case admits that the grantee had no such notice. Cook, Stock, etc., § 725; *Fay* v. *Noble*, 12 Cush. 1.

If, however, the purchaser had made an examination of the records of the stockholders, he would have found that the president was not only authorized but directed by the stockholders to execute the deed by vote passed at a meeting of the stockholders at which a quorum was present. The record distinctly states that such quorum was present. The record is regular in form and is attested by the proper official, and the purchaser had the right to presume that it was correct. Beach, Pri. Corp. § 295; *McDaniel* v. *Flower Brook Mfg. Co.*, 22 Vt. 274; *Isbell* v. *N. Y. & N. H. R. R.* 25 Conn. 556.

The Packing Co. having received the benefit of the sale of the real estate, and disposed of a portion of it, is now bound by its deed. Beach. Priv. Corp. § 203.

By-Law: *Bucksport & Bangor R. R.* v. *Buck*, 65 Maine, 536, (as to capital stock subscribed); *Sturges* v. *Stetson*, 1 Biss. p. 248;

Thomp. Com. Corp. § 1061; *Pratt* v. *Munson,* 17 Hun, 475; *Greenpoint Sugar Co.* v. *Whitin,* 69 N. Y. p. 338; *Burrall* v. *Bushwick R. R. Co.,* 75 N. Y. 211; *Lehigh Ave. Ry. Appeal,* 5 L. R. A. 367; *State* v. *Morristown Fire Assoc.* 23 N. J. L. 195; *Haskell* v. *Sells,* 14 Mo. 91; *K. & P. R. R. Co.* v. *Kendall,* 31 Maine, 470; *Chicago* v. *Rumpff,* 45 Ill. 90.

*C. E. and A. S. Littlefield,* for M. W. Levensaler, Admr. of Sarah F. Miller.

Counsel cited: *Ellsworth Manfg. Co.* v. *Faunce,* 79 Maine, 440.

SITTING: PETERS, C. J., HASKELL, WISWELL, STROUT, SAVAGE, JJ.

SAVAGE, J. Bill of interpleader by the plaintiff as assignee in insolvency of the Waldoboro Packing Company. The plaintiff alleges, among other things, that by reason of conflicting claims to the funds in his hands, he is in danger of being harassed and that he cannot safely pay out and distribute the same without the aid of the court in equity. The previous phases of this litigation may be found in *Miller* v. *Kenniston,* 86 Maine, 550, and *Miller* v. *Waldoboro Packing Co.,* 88 Maine, 605.

The cause comes to us on report. All the parties who claim to be interested in the fund, waiving technical questions, ask for a decision upon the merits. Therefore, in the hope of being able to put an end to this long and annoying controversy, we proceed to inquire whether the bill, after any species of amendment suggested by the pleadings or facts proved, can be sustained.

The vital question is whether certain conveyances, executed by the officers of the Waldoboro Packing Company, and in its name and under its seal, long prior to its being adjudged insolvent, are valid. The purchase money received for these conveyances constitutes the fund in the hands of the assignee. The records of the corporation show that these conveyances were both authorized and ratified by votes of the stockholders in meetings duly called.

But it is objected, (and this is the only objection that is raised)

that the action of the stockholders was void for want of a quorum at any of their meetings.   It appears that at the organization of the corporation, April 23, 1888, it was voted that "the capital stock of this company shall be $30,000; that said capital stock shall be divided into shares of $50 each."     Subsequently, July 5, 1888, the following by-law was adopted:—"At all legal meetings of the company there must be present at least 1-3 of the stockholders, holding at least 1-3 of the shares of stock, to constitute a quorum to do business."     It also appears that only 96 shares of stock were ever "subscribed for or issued."

It is not claimed that there were not present at the stockholders' meetings at least one-third of the stockholders in number, holding at least one-third of the ninety-six shares which had been issued. But it is claimed that under the by-law, the presence of stockholders holding one-third of the entire authorized capital stock of 600 shares, namely 200 shares, was necessary to make a quorum, and that "the whole number of shares of stock subscribed for being considerably less than one-third of the shares of [authorized] stock, by reason whereof, said corporation was legally incapable of having present at any of its meetings a legal quorum of stockholders."     If this is so, then it appears that stockholders holding less than one-sixth of the authorized capital stock, by adopting this by-law, committed corporate suicide.     Thereafter, the stockholders could hold no meeting, could elect no officers, could fill no vacancies, could make no new by-laws nor alter old ones, could neither buy nor sell, could make no contracts, could transact no corporate business whatever.     The only possible escape from corporate destruction would be by obtaining additional subscriptions for stock, and this, it is easy to see, might be impracticable or impossible. If such is the construction which we are required to place upon the by-law in question, we should not hesitate to declare it to be unreasonable and void, as being totally subversive of corporate purposes. If a corporation chooses to die, there are easier and more appropriate methods.

It is conceded, and correctly so, that stockholders holding less than a majority of the authorized stock, but holding a majority of

the stock issued or subscribed for, may adopt by-laws, in the absence of any restrictive provisions in the charter or previous by-laws. Accordingly no question is made but that the by-law under consideration was legally adopted.

Does the phrase in the by-law, "holding at least one-third of the shares of stock" have reference to the whole amount of stock authorized, or to the whole amount of stock issued or subscribed for? We think the latter. The by-law relates to meetings of the stockholders. It established a quorum. It determined what proportion of stockholders' interest in the corporation must be represented at a meeting. There must be present at least one-third of the stockholders in number, and the stockholders present must hold at least one-third of the shares of stock.

While it is not denied that the stockholders have the right, in general, to fix the number of shares necessary for a quorum at a certain proportion of the capital stock authorized, still we think their intention so to do should be clearly expressed. The amount of capital stock authorized may have, and frequently does have, very little to do with the amount actually issued or subscribed for, and which represents the actual working capital.

The entire pecuniary stockholding interest is owned by those holding shares issued or subscribed for. It would be natural to suppose, that in fixing the amount necessary for a quorum, the stockholders would have in mind the stock which represented value and was owned and which could be voted upon in stockholders' meetings. Capital stock which has never been subscribed for nor issued cannot be voted upon, even by the corporation. *American Railway Frog Co.* v. *Haven,* 101 Mass. 398; *Ex-parte Holmes,* 5 Cow. 426; 1 Morawetz on Private Corporations, § 478. It is commonly said to "remain in the treasury." Such stock has not been divided into shares; it remains to be divided, as issued. The shares in such stock are potential, rather than actual. *Sturges* v. *Stetson,* 1 Biss. 246. They belong to the stockholders collectively. They can have no place or purpose in a stockholders' meeting. The very words "shares of stock" in this by-law seem to imply that the stock intended is stock that has been divided into shares

and issued, or at least subscribed for.  *Burrall* v. *Bushwick R. R. Co.*, 75 N. Y. 216.   The phrase " *holding* at least one-third of the shares of stock" naturally relates, we think, to "shares of stock," that are capable of being *held*, and are *held*, by stockholders.   The undivided stock is not *held* by anyone.   This construction seems to be fairly deduced from the purpose of the by-law, and from its language also, and such was, we think, the intention of the stockholders.   For as we have already seen, only 96 of the 600 shares of authorized stock have ever been issued or subscribed for.   Any other interpretation is destructive.

A case in point is *Greenpoint Sugar Co.* v. *Whitin*, 69 N. Y. 328. In that case, the validity of a mortgage was, by statute, made dependent upon " the written assent of the stockholders owning at least two-thirds of the capital stock" of the corporation.   It will be observed that these words are substantially identical with the language of this by-law, the only essential difference being that in the New York case, the number of stockholders necessary to give effect to their action is not limited.   The court in that case, said: " The capital stock fixed in the articles of association was 2500 shares, but there had been only 2000 shares actually issued, and only that number were then owned, and for aught that appears no more was intended to be issued.   The owners of more than two-thirds of that number signed the assent.  . . . .   For the purposes of this act, we think that the amount actually issued and owned should be regarded as the amount of the capital stock.   The design was to confer this power of assent upon those who represented two-thirds of the actual stock.   They represented two-thirds of the pecuniary interest and property of the corporation.   Otherwise it might happen that there would not be a sufficient ownership of stock to enable the company to execute a mortgage at all."   Precisely what it is claimed has happened in this case.   See *State* v. *Morristown Fire Association*, 23 N. J. Law, 195.

But it is earnestly claimed that such views as these are inconsistent with the opinion of this court as expressed in *Ellsworth Manufacturing Co.* v. *Faunce*, 79 Maine, 440, and that that case should be regarded as decisive of this.   In that case, the by-law

construed was, "No business shall be transacted at any meeting of the stockholders, unless a majority of the stock is represented, except to organize the meeting and adjourn to some future time." The authorized capital stock was 400 shares, and 243 shares had been subscribed for. At the meeting whose acts were called in question, only 138 shares of the capital stock were represented. The court held that under the by-law, "it would take 201 shares to constitute a majority of that stock." But in some important respects, certainly, the by-law in that case may be distinguished from the one in the case at bar. The language of the two by-laws is far from being identical. There, the phrase construed was, "a majority of the stock." Here it is, "at least one-third of the stockholders *holding* at least one-third of the *shares* of stock." In that case, there was no reference to the stock being *held*, no reference to stockholders *holding* stock, no reference to "shares", and possibly no implication, that stock issued or divided was meant. And the action of the stockholders in adopting that by-law was not self-destructive. More than a majority of the authorized stock had been subscribed for. The learned justice who drew that opinion seems to have placed much stress upon this latter fact, and upon the construction which the stockholders themselves had placed upon the by-law after its adoption. At best, the case of *Ellsworth Manufacturing Co.* v. *Faunce*, seems to go to the extreme limit of strict construction. How far that case may be distinguished from this, or how valid the distinctions drawn between that case and this, we do not deem it necessary for us now to decide. We are satisfied that "the language, as well as the evident intent and meaning," of this by-law compels us to hold that a quorum of the stockholders of the Waldoboro Packing Company was "at least one-third of the stockholders holding at least one-third of the shares of stock" which had been issued or subscribed for. And in so far as the opinion in *Ellsworth Manufacturing Co.* v. *Faunce*, is in conflict with the views herein expressed, it must be regarded as overruled.

It follows that the conveyances by the officers of the Waldoboro Packing Company were duly authorized, and were valid. But this

finding makes it necessary to dismiss this bill. The plaintiff as assignee, being necessarily himself one of the claimants of the fund, cannot be awarded an interpleader.

Nor have we any original or concurrent jurisdiction over the distribution of the fund. In the first instance, the court of insolvency has sole jurisdiction. *Bird* v. *Cleveland,* 78 Maine, 524.

*Bill dismisssd.*