## No. 13,961.

### HENRY P. HAKE vs. LEE AND BEALL.

#### SYLLABUS.

1. A sale of property for taxes which have been paid confers no title upon the adjudicatee.
2. A co-owner, or tenant in common, who purchases the property held in common at a sale for taxes, assessed against his co-owners and himself, acquires no greater interest in the property than he held before, except that he has a claim against his co-owners for reimbursement according to their respective shares.

APPEAL from the Thirteenth Judicial District, Parish of Grant.— *Blackman, J.*

*Robert J. Bowman,* and *Ryan & Blackman,* for Plaintiff, Appellee.

*Williams C. Roberts,* for Defendants, Appellants.

STATEMENT.

The opinion of the court was delivered by

MONROE, J.   This a petitory action, in which the plaintiff seeks to recover an undivided half interest in 760 acres of land, situated in the Parish of Grant and valued at about $8.00 or $10.00 per acre, and to obtain a judicial partition thereof as between himself and the defendants.   The defendants claim to have acquired the entire tract at a probate sale, made in the Succession of Henry O'Neal, and they allege that the plaintiff is estopped to attack their title for the reason that, as they claim, he was represented at said sale by an agent, who was authorized to buy, and who actually bid upon, said land.

The facts, as we find them from the record, are as follows, to-wit:

The land in question was acquired, in indivision, by Henry P. Hake and Henry O'Neal from Wm. Hake and Wm. Coach, upon July 11th, 1888, the vendors being owners at that time, and afterwards, of other lands in the same parish, amounting to seven thousand acres, or more. The parties were residents of the State of Michigan, and Henry P. Hake continued to reside there, but O'Neal removed to Louisiana, where he died, probably, in 1897.   During the year 1895, and the early part of 1896, O'Neal wrote to Hake on the subject of dividing the land, or of buying Hake's interest, or of selling his own, but no agreement was reached.   The last of these letters, which we find in the record, is dated May 1st, 1896, and reads:   "I wrote you some time ago to give. or take, so much cash for the lands that you and I own together in Louisiana.   I got no answer from you.   I am willing to divide those lands, will give you choice; the east half or the west half, or I will take $2,000 for my share, in cash.   Please let me know what you intend to do, one way or the other.   Would like for you to come down here.   I think that we could fix up a trade.   Henry, write soon.   Regards to all," etc.

At the time this letter was written, the land was advertised for sale for the State taxes of 1895, and upon June 6th, following, the whole tract was adjudicated to O'Neal for $38.50, as in full payment of said taxes, interest and costs; and, thereafter, at O'Neal's death, it was inventoried as belonging to his succession; and, later still, in April, 1898, was sold, by order of the probate court, as the property of said succession, for $1,400, to the defendants in this case.

We find in the record the following evidence concerning the taxes

for which the sale above referred to purports to have been made, to-wit:

1. A tax receipt bearing date January 27, 1896, showing that Hake and Coach (the vendors of Hake and O'Neal), in paying the taxes upon the large body of land owned by them, and from which they had sold the tract in question, had also paid the taxes for 1895 upon said tract. To which receipt is appended this certificate (following the description of property), to-wit:

"STATE OF LOUISIANA,

"Parish of Grant.

"By authority in me vested by law, and upon the order of C. D. Kemp, tax collector, I this day cancel in full the taxes on this property for 1895, the same having been paid January 27, 1896.

"(Signed)   R. S. CAMERON, *Clerk and recorder.*"

2. A letter from H. P. Hake, dated "South Grand Rapids, Michigan, February 9, 1897," addressed to C. D. Kemp, tax collector, Colfax. La., and reading as follows:

"Let me know what the taxes are on the O'Neal and Hake lands, as I wish to pay them, and also let me know when they must be paid. Please let me hear from you by return mail, and oblige.

"Yours respectfully,

"(Signed)   HENRY P. HAKE."

Which letter was returned to the writer with the following indorsement, to-wit:  "The above has been paid by Hake and Coach.

"(Signed)   C. D. KEMP, *Tax Collector.*"

Why the property was again sold for taxes, which appear thus to have been paid, is unexplained. Nor does the record inform us how it happened that the tax collector, in so indorsing H. P. Hake's letter of inquiry, should have overlooked the fact that, in June, 1896, he had made sale of the land to which that letter referred.

In April, 1898, when the tract in question was offered at the probate sale, in the Succession of O'Neal, there was present Mr. D. E. Corbitt, who, for many years, as the evidence shows, had represented Wm. Hake (one of the vendors of O'Neal and Hake) as his attorney, and who, on that occasion, was authorized to purchase, for Wm. Hake, the undivided half interest of O'Neal in said lands, which interest his principal appears to have understood was all that was to be, or could be, lawfully sold. Mr. Corbitt was, also, authorized, at that time, by

Hake vs. Lee & Beall.

Henry P. Hake, to deliver to Lee and Beall (the defendants herein) a deed, which Hake had executed as the result of previous correspondence with said parties, to his interest in said land, provided that they paid the price which had been agreed on, or considered, to-wit: $3,300. In this situation, when the whole tract was offered, as the property of the Succession of O'Neal, Corbitt gave public notice that one-half of it belonged to Henry P. Hake, and that no interest in such half would pass by the sale. And he afterwards bid on the interest of, O'Neal, for Wm. Hake, whose money he held for that purpose. But the property was adjudicated, as has been stated, to Lee and Beall. Corbitt nevertheless, still made an effort, though unsuccessful, to sell, to the adjudi·catees, the interest of H. P. Hake.

But the adjudicatees, notwithstanding the notice which they had received, assumed to have acquired the whole tract, and began cutting the timber, which gave it it's principal value, and the plaintiff brought this suit, and several others, which have been before this court, in one form or another, to vindicate his rights. The trial in the District Court resulted in a judgment for the plaintiff.

## OPINION.

If, as appears to have been the case, the taxes for 1895 had been paid prior to June 6th, 1896, when the tax collector attempted to sell the land in order to recover them, it is quite evident that no title could have passed to any one as the result of such attempt. But, even if they had not been paid, the adjudication of the property to O'Neal, who was a co-owner, or tenant in common, with Hake, gave to the adjudicatee no greater interest in the property than he held before, except that he had a claim upon Hake for re-imbursement according to their respective shares. Black on Tax Titles, 141; Clark vs. Lindsey, 47 Ohio St. (9 L. R. A. 740, and note.) As O'Neal had never become the owner of Hake's interest, it follows that such interest could not, lawfully, have been sold as the property of his succession. And as the defendants were fully informed of the situation and notified, at the time, that no title to Hake's interest would pass; and moreover, as the amount for which they pretend to have purchased the whole tract was less than the value of O'Neal's half interest, they appear in this litigation without a shadow of either law or equity to support their position.

Some attempt was made to show that Corbitt bid upon the whole property, at the succession sale, as the authorized representative of

Henry P. Hake. It is sufficient to say that the attempt was wholly unsuccessful, and that the plea of estoppel has, therefore, not even the foundation upon which it is predicated.

Judgment affirmed.

Rehearing refused.