April 22, 1907.

―――――――o――――――――

No. 4038.

(Court of Appeal, Parish of Orleans.)

HARRY A. THOMPSON vs. JOHN F. A. HEBEL.

1. Parol evidence is admissable to establish clerical errors in the description of lands which are conveyed in a deed, to explain lurking ambiguities; to show boundaries, etc.
2. While it is undoubtedly the general rule that one tenant in common cannot acquire an outstanding title adverse to his co-tenant's and that the purchase of such inures to the benefit of all the co-tenants upon equitable contribution being made, there are well defined and well established exceptions to the general rule as where co-tenants have acquired their respective titles by different instruments and no relation of trust and confidence existed between them.

Appeal from Civil District Court, Division "C."

A. D. Henriques, Jr. & Jos. Sinai, for Plaintiff and Appellee.

A. J. Peters & O. H. Simpson, for Defendant and Appellant.

MOORE, J. Plaintiff sued the defendant for slander of title and the latter answered by setting up title in himself. In con-

sequence of this answer the defendant has changed the suit to a petitory action in which he becomes plaintiff and he must, therefore, succeed on the strength of his own title and not on the weakness of his adversary's 27 A. 307; 32 A. 613; 12 A. 576; 33 A. 250; 40 A. 558; 46 A. 564; 35 A. 355.

The facts are as follows:

On the 23rd October, 1890, one Alfred Thompson, the father of plaintiff, acquired by an act under private signature from the "Society for the relief of Destitute Orphan Boys."

"A certain portion of ground, with all the improvments thereon, situated in the Parish of Orleans, being part of the Milne tract, designated as a portion of 'M,' bounded on the north by Lake Pontchartrain in front, on which it measures about forty arpents, on the east by lands of ————, on the line of which it measures eight arpents; on the south by the property of ————, on the line of which it measures forty arpents; on the west by Bayou Couchon, as per plan of Louis Bringier, annexed to an act of partition between the Society for the relief of destitute Orphan Boys and others, passed before A. Chiapella Notary Public in said City on the 29th day of August, 1845."

On the 16th May, 1896, Alfred Thompson mortgaged to one John Storch a part of his property, the portion mortgaged being .described as follows:

"A certain tract of ground in the City of New Orleans and Parish of Orleans, fronting on Lake Pontchartain, described and bounded as follows to-wit: The said property is bounded on the south by the right of way of the North Eastern Railroad along which its tracks are laid; on the west by the Bayou Couchon; on the north by the shore of Lake Pontchartrain and on the east by a line drawn between the North Eastern Railroad track and the Lake Shore, at what is known as the Nine Mile Post" perpendicular to the said railroad track. Said property being a part of that acquired by the present mortgagor by purchase from the Asylum for Destitute Orphan Boys by act under private signature dated Oct. 23rd, 1890, and deposited in the Notarial records of James McConnell, Jr., Notary Public under date of Oct. 23rd, 1890."

On the 6th July, 1898, by act before James B. Ward, Notary

Public, Alfred Thompson, purports to sell to John Storch, with the right of redemption, the whole of the first above described property.

On the 1st September, 1899, the property was sold for State taxes assessed thereon in the name of Alfred Thompson, and was adjudicated to Harry Thompson, the plaintiff. On the 6th day of April, 1904, the property was sold in the Succession of John Storch and was acquired by the defendant herein. It appears that when Alfred Thompson sold the property to Storch on the 6 July, 1898, it belonged in indivision to Thompson and his two children, Maud and Harry, the latter the plaintiff herein, the children acquired their interest by inheritance from their mother, who had died some two months prior to the sale to Storch. Subsequently Maud died, intestate her sole heirs being her father and her said brother, Harry. The respective joint interest of father and son was, therefore, nine-sixteenths to the father, Alfred Thompson, and seven-sixteenths to the son, Harry Thompson.

Admitting that Alfred Thompson could have legally conveyed only nine-sixteenths of the property to Storch and that as a consequence the defendant acquired from the latter's succession only that proportion, in indiivsion, of the property, the defendant's contention is that forasmuch as Harry Tohmpson is his co-owner the latter could not purchase the property for taxes for his own exclusive benefit; that the title so acquired operates to the benefit of the co-owner—the defendant—and that, therefore, to the extent of defendant's co-ownership in the property the title to him should be recognized and held valid. On the other hand plaintiff's contention is, first: That Alfred Thompson never intended to sell nor did Storch intend to purchase, nor did the former in fact sell or the latter purchase any more than Alfred Thompson's interest in that portion of the property which was conveyed by the mortgage granted, as aforesaid, on the 16th May, 1896; that the description of the property in the act of sale is an error of the Notary who prepared the act; that Storch's attention was called to it during his life time and would have been corrected by him had not he been prevented by sickness and subsequently by death; and that it is patent on the face of act of sale that it was in contemplation

of the parties to sell, with the right of redemption, *only* so much of the property as was previously mortgaged to Storch; and *Secondly,* that in no event can plaintiff's acquisition at the tax sale inure to defendant's benefit forasmuch as they were not co-owners under and by virtue of a common deed and that hence no relation of trust existed between them. There was judgment for plaintiff declaring him to be the absolute owner of the property and from this judgment the defendant appeals.

The evidence is absolutely conclusive that the description of the property in the act of sale from Alfred Thompson to Storch is the result of error and that no other part or portion of the property was intended to be sold but that small part, or portion, which was conveyed by the mortgage consented by Thompson to Storch on the 16th May, 1896.

It appears that when the debt secured by this mortgage matured Thompson was unable to meet it whereupon he and tSorch agreed that the maturity of the debt would be extended by changing the character of the security from a mortgage into a sale of the same property conveyed by the mortgage, with the reservation that Thompson should have the right, within a stipulated period (six months) to redeem the property by paying the debt and accrued interest. The preparation of the act was left to Thompson's direction. He called upon his Notary and advised him accordingly. The act was prepared by the Notary and signed by Thompson without it being read by or to him and was left with the Notary for Storch's signature which was subsequently affixed thereto. Some few months afterwards Thompson's attention was called to the error of the description and he at once called on his Attorney, Mr. James McConnell, Jr., with the result that Mc. McConnell took up the matter with Storch's lawyer with the view of having the error corrected, but as Storch was then sick and died soon about this time, the error remained uncorrected; these facts are shown not only by the testimony of Alfred Thompson, but by his attorney, Mr. McConnell, who corroborates him in every particular, save as to what took place at the Notary's as Mr. McConnell was not present at the time the act was ordered or when signed. It is contended, however, that parol evidence was not admissible to vary, alter or contradict the act of sale; objection to the trial

judge's ruling allowing such evidence, having been duly noted. We think the ruling was correct. It has been repeatedly held that the reception of parol evidence to establish a clerical error in the description of land contained in the deed, as also to explain lurking ambiiguities, to identify the property, to prove fraud practiced in the transfer of land, to show possession, to show boundaries, etc., is no infringement of the rule which demand that title to real estate be evidenced in writing only. 9 M. 40; 11 M. 449; 12 M. 649; 4 N. S. 190; 5 N. S. 297; 8 N. S. 161-660 17 La. 421; 19 La. 258; 3 A. 193; 4 A. 441; 5 A. 231-410; 13 A. 25; 15 A. 483; 21 A. 548-470; 26 A. 257; 25 A. 211; 33 A. 1033.

In Vigne vs. Brady et als 35 A. 561 the Court said: "It is a universal rule of jurisprudence that parole testimony is admissable to defeat written instruments when fraud is alleged and error is often akin to fraud. But aside from the parol evidence showing the error, we think it is made manifest *on the face of the Act of Sale itself that only* the *property covered by the mortgage was intended to be conveyed*. After reciting the consideration of the sale is the amount due upon the mortgage debt, the act declares that the mortgage is *"upon the hereinafter described property as will more fully appear by reference to an act of mortgage passed before James McConnell, Jr., Notary Public, etc., on the* 16th *day of May,* 1896, *etc.,"* which clearly shows that the "hereinafter described property" intended to be sold was the property "that more fully appears by reference to an act of mortgage passed, etc., etc., and not to the *whole* of the property out of which was carved the small portion securing the mortgage.

The act of sale of 6th July, 1898, from Alfred Thompson to John Storch we therefore conclude, conveyed to the latter the former's interest *only* in the small portion of the tract covered by the mortgage, that interest being as aforesaid, 9/16 thereof, and to that extent only did the defendant acquire at the Succession sale of John Storch.

When, therefore, the whole property was sold for taxes, the co-owners were Alfred Thompson, and Harry Thompson, and, to the extent of Alfred Thompson's interest in the small portion covered by the mortgage, Hebel, the defendant herein.

This brings us to the consideration of the question as to whether the purchase at tax sale of this property by the plaintiff — or of the co-owners—gave the adjudicatee any greater interest in the property than he held before, except to claim reimbursement from his co-owners for the taxes, according to their respective shares.

It is unquestionably a general rule of law that a tenant in common cannot acquire a title against his co-tenants by purchase at a tax sale and that a tax deed acquired by him to the whole tract gives him no greater rights, *quoad* his co-owner, than he had before.

This general rule, however, is subject to exceptions, and one of the exceptions is where the co-owner has acquired his title by a different instrument from that of his other co-owner for in that case no relation of trust and confidence exists between them, which relation is the basis for the general rule.

The principle is clearly stated by the Supreme Court of Michigan (91 N. W. R. 1022 and in 71 Ibid 900 ) to the effect that:

While it is undoubtedly the general rule that one tenant in common cannot acquire an outstanding title adverse to his co-tenants, and that the purchase to such inures to the benefit of all co-tenants upon equitable contribution being made, there are well defined and well established exceptions to the general rule as where the co-tenans have acquired their respective titles by different instruments and no relation of trust and confidence existed between them," and a number of authorities are cited in support thereof.

In Hake vs. Lee & Beall 106 La. 482, the general rule was announced and applied in that case, but it appears that both co-owners acquired the property at the same time and by the same instrument from the then owners, Hake & Coach.

In the instant case plaintiff and defendant had no common acquisition. The former acquired by inheritance from his mother and sister, the latter by subsequent conventional sale of a portion of the interest of plaintiff's father.

There is no error in the judgment appealed from and it is affirmed.

Dufour, J., takes no part.

April 22, 1907.

Rehearing refused May 20, 1907.

Writ refused by Supreme Court July 3, 1907.