## Lehigh Coal and Navigation Company's Appeal.

1. Under section seven of the Act of February 28th, 1835, the supervisors of a township have power to levy an assessment in addition to that authorized by section 24, of the same Act, for the purpose of discharging any just debt due a former supervisor. If they refuse to do so they may be compelled to make the necessary levy by a writ of *mandamus*.

2. Under section one of the Act of March 31st, 1864, the court of Quarter Sessions has full and exclusive jurisdiction; when it is made to appear that the debts previously ascertained and fixed, as by judgment, auditor's settlement, or otherwise, due by a township exceed the amounts which the supervisors may assess in any one year, by writ of *mandamus*, to direct the proper officers by special taxation to collect an amount suficient to pay the same.

3. An appeal to the Supreme Court does not lie from the decree of the court of Quarter Sessions in proceedings under said Act of March 31st, 1864.

4. The power of a tax-payer to intervene, under the Act of March 23d, 1877, is confined to the court of Common Pleas; he cannot therefore intervene, by writ of *certiorari* to the Supreme Court, in proceedings in the Court of Quarter Sessions, under said Act, of March 31st, 1864.

5. Section ten, Article IX., of the Constitution, does not apply to the incidental and ordinary expenses of making and repairing township roads.

March 11th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ., STERRETT J. absent.

APPEAL from the Court of Quarter Sessions of the Peace of *Carbon county:* Of January term, 1886.

Appeal by the Lehigh Coal and Navigation Company, on behalf of Mauch Chunk township, from the order of the Court of Quarter Sessions of the Peace of Carbon county, ordering a *mandamus* to issue against the supervisors of said township to levy and collect a special tax of seven mills.

The facts of the case as they appeared before the Court, DREHER P. J., are shown by the petition, answer and paper filed in the case as follows:

November 30th, 1885, the following petition was filed:

*To the Honorable, the Judges of the Court of Quarter Sessions of Carbon county:*

Your petitioners by their attorney, respectfully represent: That they are creditors of the township of Mauch Chunk, in the county of Carbon, and the plaintiffs in the following stated judgments which have been obtained against said township, which judgments together with the interest and costs thereon remain unpaid.

Here followed the statements of thirty-nine judgments.

They further represent that demand has been made on the supervisors of said township for the payment of said judgment and costs. That the supervisors of said township inform them that after the payment of the ordinary and necessary repairs of the roads and bridges in said township out of the taxes which they are allowed by law to levy, no funds remain in their hands to apply to the payment of said indebtedness.

They therefore respectfully pray said Court to issue a writ of *mandamus* to John O'Donnel and Jenkins E. Jenkins, supervisors of said township, directing them by special taxation to collect an amount sufficient to pay said judgments. And they will ever pray, &c.

And now, November 30th, 1885, upon reading the within petition a rule is granted upon John O'Donnel and Jenkins E. Jenkins, supervisors, to show cause why a *mandamus* shall not issue as prayed for, returnable next term. By the Court.

January 12th, 1886, the said supervisors filed the following answer:

The undersigned Supervisors of the township of Mauch Chunk in answer to the petition filed as aforesaid, say:

That it is true that the creditors named in said petition have recovered judgments against the said township for the amounts as stated in said petition. That it is also true as set forth in said petition that demand has been made of the undersigned for the payment of said judgments and costs. The undersigned further answer that after the payment of the ordinary current and necessary repairs of the roads and bridges in said township out of the taxes which they are allowed by law to levy, no funds will remain in their hands to apply to the payment of said judgments. That the undersigned have no surplus in their hands or other funds belonging to said township out of which to satisfy said judgments; that the assessed valuation of said township is $567,495, upon which a ten mill tax has been laid for the year ending the first Monday of March, 1886, $5,674.95. That a large proportion of said taxes have and will be worked out by the tax-payers, amounting to at least $4,782.43, leaving a balance of $892.43 of said tax to be collected, which will be necessary for the payment of the ordinary and necessary repairs of the roads and bridges of said township and other necessary and current expenses for the year ending first Monday of March, 1886. That the present indebtedness of said township outside of the current expenses for the year ending the first Monday of March, 1886, so far as has come to their knowledge is as follows:

| | |
|---|---|
| Judgments enumerated in said petition for *mandamus* about | $2,000 |
| Outstanding orders about | 500 |
| Judgment in favor of John Brighton against the township debt, interest and costs, | 1,100 |
| Total indebtedness, | $3,600 |

The undersigned therefore aver in answer to said petition that they have not now and will not have in their hands any funds or taxes which can be applied to the payment of the judgments mentioned in said petition.

January 21st, 1886, The Lehigh Coal and Navigation Company filed the following petition:

The petition of the Lehigh Coal and Navigation Company respectfully represents:

That your petitioner is an incorporated Company and is the principal tax-payer of the township of Mauch Chunk in said county of Carbon, paying about two-thirds of the taxes in said

township. That the alleged indebtedness for which the thirty-nine suits were brought and judgments obtained as set forth in the petition of the above stated creditors was contracted in violation of law, and said claims are not valid against said township. That said thirty-nine alleged claims are for labor and material claimed to have been performed and furnished upon and for the roads of said township during the years of 1883 and 1884, and that during said years your petitioner, the Lehigh Coal and Navigation Company, was not permitted by the supervisors of said township to work out its road taxes on the roads as it by law had the right to do, and that if the said Lehigh Coal and Navigation Co. had been permitted to work out its taxes according to law, there would have been no occasion to employ labor on the roads and make the indebtedness for which the judgments recited in the petition were obtained. That there is due to said township from the supervisors money sufficient or nearly sufficient to pay said judgments, and that the township auditors failed to charge the said supervisors with the amount due the township on the settlement of their accounts, and that your petitioner has appealed from said settlement of the said accounts on behalf of the said township, and that said appeal is now pending in the Court of Common Pleas of Carbon county, and that the sum due to the said township from the supervisors of 1884 is sufficient, with the ordinary taxes, to pay said judgments if they are valid claims against said township without levying any special tax for that purpose. Your petitioner therefore prays to be permitted to intervene in said proceeding to compel the supervisors to levy a special tax and be permitted to defend therein on behalf of said township, that if so permitted this petition may be treated as an answer to said rule. And your petitioner will ever pray.

January 22d, 1886, this petition was read at the calling up of the petition and application of creditors of Mauch Chunk township referred to therein; the Court being of opinion that nothing contained in said petition can be legally objected against the creditors of the township, the same is dismissed.

By the Court.

The court on the same day made the following decree:

And now, January 22d, 1886, the petition of a number of creditors of Mauch Chunk township having been presented, setting forth that they had recovered judgment against said township for the several amounts due them, and praying that a *mandamus* might issue to John O'Donnell and Jenkins E. Jenkins, supervisors of said township, commanding them by special taxation to collect an amount sufficient to pay said judgments, and upon the reading of said petition on November 30th, A. D. 1885, a rule having been granted upon said

supervisors to show cause why a *mandamus* should not issue
as prayed for, and the supervisors aforesaid having on January
12th, 1886, filed their answer to said rule and petition setting
forth and stating that the facts as stated and contained in said
petition are true, but that no funds remain in their hands ap-
plicable to said judgments as set forth in said petition after
the payment of the ordinary and necessary expenses of said
township; that the assessed valuation of said township liable
to road tax is $567,495. That in addition to the judgments
contained in said petition other indebtedness exists against
said township amounting to about $1,600, making the total in-
debtedness against said township about $3,600.

Now, therefore, said rule is made absolute, and it is ordered,
adjudged and decreed that a *mandamus* be issued directing
and commanding John O'Donnell and Jenkins E. Jenkins,
supervisors of Mauch Chunk township, and their successors in
office, to levy and collect a special tax of seven (7) mills on
the dollar on the present assessed valuation of taxable prop-
erty, real and personal, and occupations in said township to
pay said indebtedness.

February 12th, 1886, The Lehigh Coal and Navigation Com-
pany filed the following offer of evidence:

The Lehigh Coal and Navigation Company, a tax-payer in
said township, which has intervened to defend said township
in the above matter, offers to prove that the alleged indebted-
ness to the extent of about $2,500 was contracted by William
Fritz, one of the supervisors of Mauch Chunk township, in
the year March, 1884, to March, 1885, in employing men and
purchasing materials for the repairs of the roads of said town-
ship in violation of section 34 of the Act of 15th of April,
1834, by not permitting the said Lehigh Coal and Navigation
Company to work out on the roads its taxes; it having given
to said supervisors notice of its desire so to do, and having
been at all times ready to supply labor and material to the
extent of the road tax assessed against its property in said
township, and the value of the labor and materials which it
might have been called on to supply being greater than the
amount of such alleged indebtedness so incurred, and in ex-
cess of any needs of the said township during that year for
working and repairing the roads thereof.

Second. That there is pending in the Court of Common
Pleas of said county an appeal from the settlement of the
auditors of said township of the accounts of the supervisors
of said township for the year March, 1884, to March, 1885, in-
volving the allowance of the claims for labor and materials for
the repairs of the public roads in said township during said
year so made by said William Fritz, supervisor.

Third. That within twenty days from the rendition of the judgments against said township by Wm. Shea, justice of the peace, the then supervisors of said township were requested by said Lehigh Coal and Navigation Company to enter appeals from said judgments, the said company offering to pay all costs and expenses for obtaining said appeals and prosecuting them to final judgment, and to indemnify the then supervisors and the said township against all claims or loss by reason of said appeals, which request the supervisors declined to comply with.

Fourth. That upon the then said supervisors refusing to take said appeals, James McGready, a resident tax-payer of said township, within twenty days of the rendition of said judgments by said Wm. Shea, justice of the peace, went before the justice of the peace and on behalf of said township offered to take out appeals from said judgments against said township, pay the costs accrued, make the necessary affidavits, and give bail for interest, costs, and to indemnify said justice against all claims and damages which might be made against him by reason of granting said appeals, which offer of said McGready was refused by said justice.

Fifth. That said Wm. Fritz, supervisor of said township, in the year March, 1884, to March, 1885, is insolvent, and has given no valid security or bond for the protection of said township from his wrongs or neglects as said supervisor.

Sixth. That no provision was made at or before the incurring of any of said alleged indebtedness to repay the same by the collection of an annual tax for that purpose.

Upon this offer the following order was made:

February 12th, 1886, the within paper with offers of evidence was presented to me at chambers, and it is ordered that the same be filed *nunc pro tunc* as of January 22d, 1886, and the same is overruled *nunc pro tunc* as of January 22d, 1886.

The same day the following statement was filed:

February 12th, 1886. This day there was presented to me at chambers by counsel for The Lehigh Coal and Navigation Company a paper containing certain written offers to prove the facts therein stated, and on motion of counsel I indorsed on said paper an order allowing the same to be filed *nunc pro tunc* as of January 22d, 1886, and at the same time I overruled the offer *nunc pro tunc* as of January 22d, 1886. The creditors of the township at whose instance the *mandamus* was issued as also the supervisors by their respective counsel objected to the motion for the order of leave to file the paper *nunc pro tunc* because the Company had its day in Court when the offer could have been made, and because the supervisors, relying upon the order of the Court of January 22d, 1886, had already

levied the tax and were proceeding to collect the same. I verbally stated to the counsel for the company (counsel for creditors and the supervisors not being present, but having stated their objection by letter), but did not note it in the order for filing the paper *nunc pro tunc*, that I had grave doubts as to the power of a judge of the Court of Quarter Sessions to make any such order at chambers, but that the company might have the benefit of such action if the power existed, I made the order. The clerk of the court is therefore now this same day, February 12th, 1886, directed to file this paper as of the same date of filing the order, allowing the offers of the said company to be filed *nunc pro tunc* so that it may appear of record that the said order was made under objection made by the creditors and supervisors of Mauch Chunk township.

SAMUEL S. DREHER, P. J.

The Lehigh Coal and Navigation Company took this appeal assigning for error the order of the court dismissing its petition to be permitted to become a party, the order of the court overruling its offer of evidence, and the order and decree directing the *mandamus* to issue.

*Fergus G. Farquhar* and *R. C. McMurtrie* (*Freymam & Kiefer* with them), for appellants.—The right to intervene and defend was claimed under the provisions of the act of 23d March, 1877, P. L., 20, Purd., 365, pl. 24.

The statute is very loosely drawn, but the intent of the Legislature to provide a remedy which should be applicable to just such a case as this is, we submit, very clear. To limit the operation of this act to suits or process of law pending in the Courts of Common Pleas against townships, and to hold that it does not apply to suits in the Quarter Sessions and other courts, would be to strip it of the power to remedy the evil for which it was devised and enacted. "A remedial statute is to be extended to cases in equal mischief." Lehigh Bridge Co. *v.* Lehigh Coal and Navigation Co., 4 Rawle, 9.

Statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the Act, and when discovered it ought to be followed, with judgment and discretion in the construction, though that construction may seem contrary to the letter of the statute. Big Black Creek Improvement Co. *v.* Com'th., 94 Pa. St. R. 450.

2. Can a township, since the adoption of the Constitution of 1874, create a debt of the kind and in the manner that the debts under class one and two were contracted?

Section 10 of Article IX. reads: "Any county, township, school district, or other municipality incurring any indebted-

ness, shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest, and also the principal thereof within thirty years."

. The constitution points out the only method by which a township may incur *any* indebtedness, the debt set up was incurred in violation of that method and is void.

The principle sustained by the English authorities may be stated thus : The money needed by church.wardens and overseers of the poor must be provided in advance by taxation, and no levy of a tax for expenses previously incurred by such bodies will be sustained. A citation of some of the cases will clearly bear out this statement: Tawney's case, 2 Ld. Raym. 1009 ; The King *v.* Wavell, 1 Doug. 115 ; Rex *v.* Haworth, 12 East, 556 ; Lanchester *v.* Thompson, 5 Mad. 4 ; Rex *v.* Justices of Flintshire, 5 Barn & Ad. 761 ; Reg. *v.* Beddlington, Over-· seers, Mew's Sup. to Fisher's Dig., 334.

*Craig* (*Loose* with him) for supervisors, and *L. H. Barber* for creditors of Mauch Chunk township, appellees.—From a decree of the court made upon a petition presented in accord· ance with the provisions of this Act, March 31st, 1864, P. L., 162, no appeal lies, and the appeal taken in this case should be quashed. No appeal lies from the decree of the Court of Quarter Sessions : Appeal of Rhoads *et al.*, 5 Out. 289.

If the proceedings are contrary to the course of the common law and purely statutory they can be reviewed only on *certiorari :* Wetherald *v.* Shupe, 16 W. N. C. 502.

Where there is no provision for an appeal from the decision of an inferior court, and the whole system is statutory, the Supreme Court will not assume jurisdiction: Appeal of Gangewere *et al.*, 11 P. F. S. 342.

When a special jurisdiction is conferred upon an inferior court no appeal lies to the Supreme Court unless expressly given : Kimber *v.* Schuylkill Co., 8 Harris 366 ; Toole's Appeal, 9 Norris 376. Mifflin Twp. *v.* Elizabeth, 6 Harris 17. Bross *v.* Com., 21 P. F. S., 262.

No Act of Assembly gives an appeal in road cases, hence no appeal : Chestnut St., 86 Pa. St. 88.

On a writ of *certiorari* from the Common Pleas we are confined to an examination of those papers and docket entries which form the records of the case. With the evidence and those considerations which influenced the court in making up its decree, we have nothing to do : " *In re* Presb. Church, 15 W.· N. C., 499. Same principle in Grand Lodge of United Workmen, 1 Central Rep. 855. (Decided Nov. 9, 1885.)

In the present case there was no debt created within the

contemplation of Sec. 10, of Art. IX. of the Constitution, for the reason that there was no expenditure beyond liabilities.

In Appeal of the City of Erie, 10 Norris 398, Mr. Justice GORDON cites the following from Dill. on Mun. Corp. Sec. 88: "When a contract made by a municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the incurring of an indebtedness within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts," and then adds: "This we hesitate not to say is a sound constitutional interpretation, and in a similar case might well be adopted in the construction of our own Constitution. If contracts and engagements of municipal corporations do not overreach their current revenues no objection can be lawfully made to them, however great the indebtedness of such municipalities may be ; for in such case their engagements do not extend beyond their present means of payment, and so *no debt* is created."

Mr. Justice GORDON delivered the opinion of the Court, April 5th, 1886.

Under the 7th section of the Act of 1835 the supervisors of a township have power to levy an assessment, in addition to that authorized by the 25th section of the same act, and collect the same for the purpose of discharging any just debt due to a former supervisor. This assessment could, of course, be made on their own motion, but if they refused so to do they might be compelled to make the necessary levy by a writ of mandamus. The first section of the Act of the 31st of March, 1864, has, however, given the courts of Quarter Sessions full and exclusive jurisdiction over this matter, in that, when it is made to appear that the debts due by a township exceed the amount which the supervisors may assess in any one year, the said courts may, after ascertaining the amount of the said debts, by a writ of mandamus, direct the proper officers, by special taxation, to collect and pay the same. The proceeding here prescribed presupposes that the indebtedness has been previously ascertained and fixed, as by judgment, the auditor's settlement, or otherwise, so that the decree of the court can be regarded only as executionary. As, therefore, the court of Quarter Sessions has no power to try and pass upon the merits of the claims thus presented, the legislature has not seen proper to allow an appeal, and this, doubtless, for the reason that it could but delay the collection of the township indebtedness without promoting any just purpose. It is thus cer-

tain that the Lehigh Coal and Navigation Company has, in this case, no standing as an appellant: Nor do we see how or by what authority it assumes to intervene by the writ of *certiorari*. It has no such right by virtue of the Act of March 23d, 1877, for by this Act the power of intervention by the taxpayer is confined to the Common Pleas, and cannot by any principle of construction be extended to the executionary process of the Quarter Sessions. Admitting, however, that we have the writ of *certiorari* properly before us, we are, nevertheless, confined to the record alone, and having ascertained its regularity our power of review is at an end. But, in the record before us we have failed to discover the slightest flaw. The petition on which the order is founded is by certain creditors of the township, setting forth their several claims, regularly ascertained and fixed by judgments; demand made for payment on the proper officers, and their refusal to pay based on the ground that the township was not in funds for that purpose, and the petition closes with a prayer for a mandamus. This is followed by a rule on the supervisors, and their answer admitting the rectitude of the several claims, and setting forth the assessed valuation of the township at five hundred and sixty-seven thousand four hundred and ninety-five dollars, and the whole indebtedness at thirty-six hundred. As these debts had been ascertained and fixed by judgments before a Justice of the Peace, and as the indebtedness does not appear to have exceeded the amount allowed by the eighth section of the Ninth Article of the Constitution, the way was clear for the court to make the required order. It is urged, however, that the assessment directed by the Quarter Sessions is obnoxious to the tenth section of the article above cited, which reads as follows: "Any county, township, school district, or other municipality, incurring any indebtedness, shall, at, or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest, and also the principal thereof within thirty years." That this section cannot apply to the incidental and ordinary expenses of making and repairing of township roads, is obvious in this: the indebtedness thus mentioned is such as may arise from some contract of the municipality itself, and which for some definite period is to be interest bearing. Moreover, under the interpretation which the counsel for the appellant would give to this section, the present methods for the making and repairing of township roads would have to be abandoned, for the ten mill tax, the only one that can be levied in the first instance, may be all worked out by the taxpayers, leaving nothing for the purchase of material, the building of bridges, cost of tools, hiring of teams, and the pay of supervisors. The fact is, to

2 AMERMAN—24

say that a municipality of any sort cannot in any event employ laborers, or contract for materials, necessary to meet those constantly occurring emergencies which no human prevision can anticipate, without first providing for a tax by which they are to be paid, is to say that they shall not be permitted to exercise those functions for which they were erected. And this in an especial manner as to townships, which, as our statutes now stand, have no power to anticipate such incidental expenses, and can only assess a tax for their payment after they have been incurred.   The obstacles to the application of this constitutional provision to the case in hand seem insuperable, and notwithstanding the able and ingenious argument of the learned counsel for the appellant, we cannot see our way clear for the adoption of their views concerning the construction of this provision, and its adaptation to the matter in controversy.

> The appeal is quashed at the costs of the appellant, and the proceedings brought up by the *certiorari* affirmed.

Curiously enough, before the announcement of the judgment of this court, a motion for re-argument on part of the appellant was submitted to us which we are asked to grant on the following point:  "The Act of 1834 limits the extent of debts that may be contracted.   The Act of 1864 authorizes a levy for debts not contractual."   In answer to this application we have but to say, that a careful examination of the Act of 1834 has failed to reveal to us any such limitation as that mentioned in the point; rather the contrary, for the sixth and seventh sections thereof give to the Courts of Common Pleas power to order the payment of any judgment obtained against a township in the same manner as they may direct such payment in the case of a county, but neither the character of such judgment nor its amount is prescribed.   As this order, however, was limited to a mere direction to pay out of any moneys in the township treasury not otherwise appropriated, and as it was held in Dunne *v.* Deegan, 7 Wr., 334, that the process prescribed by the 7th section of the Act of 1835 did not apply to any other debts than those due a former supervisor, it is clear there was, previously to the Act of 1864, no means by which a creditor could compel the payment of his claims by the township officers.   This Act was, no doubt, intended to remedy this defect, and it is only necessary to read it to discover that a limitation of it to debts not arising from direct contract would be a gross perversion of legislative intention.

> The motion for a re-argument is refused.