## Allegheny Township Tax Levy.

*Taxation—Townships—Tax levy—Act of July 14, 1917.*

Township supervisors are not required, under section 421 of the General Township Act of July 14, 1917, P. L. 840, to secure leave of court to levy a tax of thirteen mills, when six mills thereof have been previously levied to take care of the sinking fund and interest on a bond issue.

Petition of Supervisors of Allegheny Township for leave to increase the millage of said township for road purposes for the year 1924. Q. S. Cambria Co., March Sess., 1924.

*Shettig & Nelson*, for petitioners; *Leech & Leech*, contra.

EVANS, P. J., May 15, 1924.—The supervisors presented their petition to the court, asking leave to levy an additional 3 mills of tax over and above the 10 mills permitted to be levied under the provisions of the Act of July 14, 1917, P. L. 840, without first obtaining leave of court. The application was opposed by a number of the taxpayers of Allegheny Township, and at the hearing the following facts appeared:

The property subject to taxation in the township is valued at a little over $1,000,000.

The township has a bonded indebtedness of $74,000.

The sinking fund provided to take care of the interest and principal of said bonded indebtedness is approximately $6000 per year, or equivalent to 6 mills on the valuation.

The ordinary and usual expense of keeping up the roads runs to about $4000.

It was the intention of the township to spend about $3000 in placing cinder upon certain of the roads.

The question was raised as to whether or not it was necessary, under these facts, to secure leave of court in order to levy 13 mills of tax, it being conceded that 6 mills covered the sinking fund required to take care of the interest and principal of the bond issue, 4 mills for road repairs and 3 mills for additional improvements to roads.

At the time of the hearing we were uncertain as to the correctness of this position, but an examination since has satisfied us that the position is well taken.

Allegheny Township Tax Levy.

The General Township Act of 1917, which act governs and controls the Township of Allegheny, provides, among other things, in section 421 of the act, as follows:

"The board of township supervisors may levy tax upon all property, and upon all occupations, within the township, made taxable for township purposes, as ascertained by the last adjusted valuation for county purposes, for the purposes and at the rates hereinafter specified, to wit, (1) an annual road tax not later than the first Monday of March of each year, not exceeding 10 mills, unless the board of supervisors, by unanimous action, shall, upon due cause shown, petition the Court of Quarter Sessions, in which case the court may order a greater rate than 10 mills, but not exceeding 10 additional mills to be levied. All road taxes shall be collected in cash."

There are other paragraphs under this section, but they have no application to the question before us.

Section 10 of article IX of the Constitution of Pennsylvania provides as follows: "Any county, township, school district or other municipality incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years."

Does the limitation of 10 mills fixed by the Act of 1917 include taxes levied to provide for a sinking fund and interest upon an indebtedness of the township?

The precise question was raised in the case of Lehigh Coal and Navigation Co.'s Appeal, 112 Pa. 360. In that case it appeared that, under the Act of 1835, there was a limitation upon the amount of taxes which the supervisors of the township might levy and collect, and the supervisors undertook to avoid the payment of certain indebtedness on the ground that they were not able to raise sufficient taxes to pay the indebtedness by reason of the provisions of the act of assembly. In passing upon this question, Mr. Justice Gordon said: "It is urged, however, that the assessment directed by the Quarter Sessions is obnoxious to the 10th section of the article above cited, which reads as follows: 'Any county, township, school district, or other municipality, incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years.' That this section cannot apply to the incidental and ordinary expenses of making and repairing of township roads is obvious in this: the indebtedness thus mentioned is such as may arise from some contract of the municipality itself, and which for some definite period is to be interest-bearing. Moreover, under the interpretation which the counsel for the applicant would give to this section, the present methods for the making and repairing of township roads would have to be abandoned, for the 10-mill tax, the only one that can be levied in the first instance, may be all worked out by the taxpayers, leaving nothing for the purchase of material, the building of bridges, cost of tools, hiring of teams and the pay of supervisors. The fact is, to say that a municipality of any sort cannot in any event employ laborers or contract for materials necessary to meet those constantly occurring emergencies which no human prevision can anticipate, without first providing for a tax by which they are to be paid, is to say that they shall not be permitted to exercise those functions for which they were elected. And this in an especial manner as to townships which, as our statutes now stand, have no power to anticipate such incidental expenses, and can only assess a tax for their payment after they have been incurred. The obstacles to the application of this constitutional provision to the case in hand seem insuperable,

and, notwithstanding the able and ingenious argument of the learned counsel for the appellant, we cannot see our way clear for the adoption of their views concerning the construction of this provision and its adaptation to the matter in controversy."

From the above it is clear that section 10 of article IX of the Constitution does not apply to the incidental and ordinary expenses of making and repairing township roads, and, therefore, that the taxes levied, as provided in this section, could not be considered as a part of the taxes to be included in the 10-mill limitation placed upon supervisors, which 10-mill limitation is for the purpose of constructing and repairing township roads. If this were not so, it might be entirely possible for a township to have not only a 10-mill levy of taxes for indebtedness purposes, but even a 20-mill tax; in which event, they would be absolutely prevented from securing taxes with which to keep the roads in repair. This clearly was not the intention of the legislature. We are, therefore, of the opinion that in the present case the Supervisors of Allegheny Township do not need to ask leave of court to levy the 13 mills of tax for the year 1924, it appearing that 6 mills of the intended levy had in fact been previously levied to take care of the sinking fund and interest on the bond issue, so that the remaining 7 mills were well within the limitation placed upon the supervisors by the legislature.

And now, May 15, 1924, for the reasons above given, the petition of the supervisors is dismissed, at the cost of the Township of Allegheny.

From Henry W. Storey, Jr., Johnstown, Pa.