## Market Street National Bank of Shamokin *v.* Coal Township et al., Appellants.

Argued September 27, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Charles C. Lark,* for appellants.

*W. H. R. Unger,* with him *F. F. Reamer,* for appellee.

OPINION BY HIRT, J., November 15, 1944:

Appellant township (of the first class in a county of the fifth class) borrowed money from plaintiff bank between 1938 and December 1943. The loans were evidenced by six notes of the township in varying amounts. There is no dispute as to the amount due the bank. Appellants in the stipulated facts admit that the total unpaid balance on the loans is $42,500. The indebtedness in that amount also appears in the auditors' report for the year 1943. No issue as to the merits of the claim therefore is involved. Cf. *Lehigh Coal and Navigation Co.'s Appeal,* 112 Pa. 360, 5 A. 231. On April 11, 1944, the bank served notice on the township commissioners requesting them to levy a special tax of five mills to be used in reducing the loans. The request was ignored, whereupon the bank (under §1711 of the First Class Township Law of June 24, 1931, P. L. 1206, 53 PS 19092-1711) petitioned the court for an order directing the commissioners by special taxation to collect an amount sufficient to discharge the debt. After hearing, the court by peremptory mandamus directed the commissioners to levy a special tax of 5 mills on the assessed valuation "for the year 1944, and five (5) mills in each year thereafter until the whole debt, interest and costs ...... are fully paid."

The above act is silent as to the right of appeal from an order of court under §1711. Therefore, since no constitutional question is involved (*Equit. L. Soc., Inc. et al. v. Bell et al.*, 339 Pa. 449, 460, 14 A. 2d 316), we are limited to a review of the case on certiorari in its broadest sense. *Grime v. Dept. of Pub. Inst.*, 324 Pa. 371, 188 A. 337. We may consider the evidence but only to determine whether an error of law has been committed. "Matters resting solely in the judgment of the court below cannot be interfered with unless there has been a serious abuse of discretion": *Elkland Leather Workers' Assn. Inc.*, 330 Pa. 78, 198 A. 13.

It is argued that the court abused its discretion in imposing the burden of an additional 5 mills on a tax rate already too high. It may be conceded that the present commissioners inherited an indebtedness incurred by their predecessors somewhat out of proportion to the resources of the township. The total township indebtedness is $584,292 of which $389,899 is funded. The floating debt of $194,393 includes the notes in question, other notes for materials purchased, judgments, unpaid bills, unpaid wages, and past due interest on township obligations in the total amount of $58,796. The township levy for 1944 taxes was at the rate of 27 mills—10 mills for general purposes, 11 mills for payments into sinking funds, and a special levy of 6 mills by order of court in 1943 to discharge existing debts to a water company and a power and light company. On the total assessed valuation, a levy of 27 mills should return $133,780 in taxes if collected in full. This amount, less shrinkage on collection, would not more than meet current expenses, debt service and the payments required under the former court order. Nothing would be available to apply on the debt due plaintiff.

With the increase imposed by the court the township levy for the year will be at the rate of 32 mills. In

the light of all of the circumstances, including the amount of the taxes assessed against township property by the school district and the county, there is nothing in the record charging the lower court with an abuse of discretion. That charge in our opinion is completely met by appellants' admissions, alone, that the basis of assessment in general throughout the township was between one-third and one-half of the actual value of taxable property and that the assessments of "residences and business places have in some instances been as low as 10% of their actual market value." On these admissions the total township taxes, as increased by the court, are not more than would be produced by an assessment of between 10 2/3 and 16 mills on the actual or market value of taxable property. A tax rate of 16 mills on full value is not excessive under the circumstances.

It would seem that the answer to the township's problem is not to postpone the payment of its debts to the indefinite future but to put its financial affairs in order. As a foundation for an orderly structure, assessments should be equalized to meet the requirement of uniformity. This can best be done by compliance with the Act of May 21, 1943, P. L. 571, §602, which requires that township assessments of taxable property in a county of the fifth class shall be at "the actual value thereof."

Order affirmed at appellants' cost.