## Adams' Appeal

*Paul E. Fetterolf*, for appellant.

*Robert Stuckenrath*, county solicitor, for appellee.

UTTLEY, P. J., April 22, 1946.—This is an appeal by a taxpayer, under the Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, from the order of the board of assessment and revision of taxes, refusing to reduce an assessment of real estate made as the basis of taxation for the year 1946.

The assessed property is situate in the business district, in the third ward of the Borough of Lewistown, Mifflin County, fronting 30 feet on the north side of East Market Street, and extending back same width 39 feet, thence back 26 feet wide, a distance of 6 feet; thence back 23 feet wide, a distance of 20 feet; thence back 28 feet wide, a distance of 135 feet, to a public alley, and having thereon erected two one-story club diners, occupied and used together as a restaurant, where meals, beverages and liquors are served.

The property was assessed for the year 1943 at $14,000 and for the years 1944 and 1945 at the same total amount but divided into $7,000 for the ground and $7,000 for the improvements. Taxes were paid upon these valuations for the years 1943, 1944 and 1945, without objection or appeal.

The assessment for the third ward of the Borough of Lewistown, for the year 1946, was returned by the assessor in August, typed upon the permanent record of the chief assessor, and on and after September 1, 1945, became a public record open to and available for inspection by any taxpayer. The assessors for other districts of the county were late in returning their assessments for 1946, causing a delay in publishing the

notice that the assessment roll of the county was completed and ready for inspection.

The board, however, gave notice by publication in The Sentinel, a daily newspaper published in the Borough of Lewistown, Mifflin County, on October 18, 19 and 20, 1945, and in The Belleville Times, a weekly newspaper published in the Village of Bellville, Mifflin County, on October 18, 1945, that the assessment roll for the County of Mifflin for the year 1946 had been completed, stating the place where and the times when the same would be open for public inspection, and that any person desiring to appeal from any assessment should file a statement in writing, designating the assessment appealed from, with the board, on or before November 15th.

As the assessed value of the real estate in question for the year 1946 was not changed from the assessed value thereof on the assessment rolls for the years 1943, 1944 and 1945, no personal notice of the assessment for the year 1946 was sent to appellants. Personal notice to the taxpayer is only required by the Act of May 21, 1943, P. L. 571, sec. 701, when the assessed value of the taxpayer's property for any year is changed from that fixed in the assessment roll for the preceding year.

Notwithstanding the public notice above mentioned, appellants took no action whatsoever concerning the assessment of the real estate in question until December 27, 1945, when they filed a notice of appeal which the board on December 28th refused to consider because it was too late. The appeal to this court followed.

The question raised by the motion to quash is whether the notice published in the newspapers on October 18, 19 and 20, 1945, above mentioned, was a compliance with and gave appellants the notice required by the Act of 1943, supra, and whether appellants' notice

of appeal filed December 27, 1945, was too late and therefore ineffectual.

The Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, 72 PS §§5453-101 et seq. repealed the General County Assessment Law of May 22, 1933, P. L. 853, 72 PS §§5020-1 et seq., insofar as it applied to counties of the fourth to eighth class inclusive, except as to the designation of objects, property and persons subject to and exempt from taxation for city and school purposes in cities and the assessment and value thereof for such purposes.

The motion to quash this appeal involves the construction of sections 601, 602, 603, 604, and 702 of the Act of May 21, 1943, P. L. 571, 72 PS §§5453-601, 602, 603, 604 and 702.

Section 601 provides that "Anually, on or before the first day of September, the chief assessor shall, from the returns made by the local assessors, prepare and submit to the board . . . an assessment roll . . .".

Section 602 states that it shall be the duty of the assessor to assess and value the subjects of taxation "according to the actual value thereof, and at such rates and prices for which the same would separately bone fide sell. In arriving at such value, the price at which any property may actually have been sold shall be considered, but shall not be controlling. Instead, such selling price estimated or actual shall be subject to revision by increase or decrease to accomplish equalization with other similar property within the county".

Section 603 provides that the assessment roll shall state for each political subdivision, inter alia, "the value of each parcel or tract of real property, showing separately the value of the land and the value of any improvements thereon".

Section 604, providing that the assessment roll shall be open to public inspection and for notice thereof by publication, reads as follows:

"The assessment roll shall be open to public inspection at the offices of the board at the county seat, during ordinary business hours of each business day, from the time of completion and delivery to the board, to and including the first day of October. Upon receipt of the assessment roll from the chief assessor, the board shall give notice by publication in at least one and not more than three newspapers published in the county, that such assessment roll has been completed and the place and times when such roll will be open for inspection, and shall in the same notice state that any person desiring to appeal from any assessment shall file a statement in writing, designating the assessment appealed from with the board on or before the fifteenth day of November."

Section 702, relating to the hearing of appeals, reads in part as follows:

"On the first business day following the first of October, the board shall meet for the hearing of appeals and shall continue to meet for such purpose from time to time, until all persons who have stated their intention to appeal have been heard and the appeals acted upon, *but not later than the first day of December.*" (Italics supplied.)

The contention of appellants is that if the notice required by section 604 had been published September 1, 1945, when the assessment roll was completed and open for inspection, they would have been allowed from September 1, 1945, to November 15, 1945, a period of 76 days within which to file their notice of appeal, and that, therefore, as the notice was not published until October 18, 1945, they were entitled to 76 days after October 18, 1945, or until January 2, 1946, within which to file their notice of appeal.

Although the notice, required by section 604, was not published until October 18, 1945, appellants had four full weeks thereafter until November 15, 1945, the last day stated in the notice and fixed by the statute,

within which to file their notice of appeal, and they gave no notice, and took no appeal, nor any action whatever until December 27, 1945, two months and nine days after October 18, 1945, the date of publication, one month and 12 days after November 15, 1945, the last day for filing notice of appeal, and 26 days after December 1, 1945, the last day upon which the board was permitted by section 702 to hear appeals. Therefore, appellants had ample notice under section 604, unless that or some other section of the act specifically required 76 days' public notice in the newspapers.

The assessment roll referred to in section 601 is clearly the assessment roll for the entire county, which cannot be completed until all the assessors have returned their assessments. It is a matter of common knowledge that assessors in some of the districts are frequently, if not always, late in making their returns. While section 601 provides that the assessment roll shall be prepared and submitted to the board annually before the first day of September, it can hardly be contended that if this was not done before that date the assessment would be invalid.

"The revenue laws commonly provide that the assessment shall be made, or shall be completed, on a certain day or within a certain time. Such a provision is so far directory that the assessment will not be invalidated by a delay beyond the statutory time, unless it is shown that the delay prejudiced the particular taxpayer by depriving him of a right to be heard before the board of equalization or otherwise operated to his disadvantage": 61 C. J. sec. 761, quoted in Baldwin Appeal, 153 Pa. Superior Ct. 358, 364.

We find nothing in section 604, nor in any part of the Act of 1943, supra, which allows the taxpayer 76 days after the publication of the notice referred to in section 604 within which to file his notice of appeal. This contention is based upon a forced construction of the act. It is very significant that section 604 provides only that

the assessment roll shall be open for inspection, from the time of its *completion and delivery to the board* and that upon the *receipt* of the assessment roll from the chief assessor notice shall be given by publication in the newspapers. There is absolutely nothing in section 604 which indicates how often the notice shall be inserted in the newspapers or what length of time shall intervene between the first publication and November 15th, when the notice of appeal shall be filed. The section is not explicit as to how long, before the last day for filing notice of appeal, the notice shall be published in the newspaper. This leads to the conclusion that the legislature intended that the notice by publication shall be reasonable.

The provision of section 701, requiring personal notice to the taxpayer, whose assessment has been changed, is more explicit because the status of the taxpayer is immediately affected by the change. Such a taxpayer would naturally be expected to have longer and more specific notice than one whose assessment is permitted to remain as it was for the preceding year. While this personal notice must be sent not later than the first of September, the notice of appeal must be filed on or before the first day of October, giving the taxpayer only 30 days' notice. Less notice would reasonably be required by publication to the taxpayer whose assessment has not been changed. While we agree with the opinion of the court in In Re: Petition of Greenberg and Lebowitz, 36 Municipal Law Reporter 28, that the purpose of the Act of 1943, supra, is to establish permanent assessments and abolish the old triennial assessments, we are unable to go so far as to agree with the court in that case that "Section 701 clearly indicates that only changes made in the prior assessments by the annual assessments are subject to appeal to the '(Board of Assessment and Revision of Taxes)'". Section 604 still gives the right of appeal after

reasonable notice by publication to the taxpayer whose assessment has not been changed.

The Statutory Construction Act of May 28, 1937, P. L. 1019, article IV, sec. 51, 46 PS §551, provides that when the words of a law are not explicit the intention of the legislature may be ascertained by considering, among other things, the former law, if any, including other laws upon the same or similar subjects: Baldwin Appeal, 153 Pa. Superior Ct. 358, 359.

In The General County Assessment Law of May 22, 1933, P. L. 853, sec. 509, 72 PS §5020-509, the county commissioners acting as a board of revision were required only "to give notice, by advertisement, in one or more newspapers printed in or nearest to the seat of justice of the proper county, at least three weeks before the day of appeal, of the time and place fixed for such appeal from triennial assessments". The triennial assessments under the Act of 1933, supra, stood for three years after they were made except where buildings or other improvements had been newly erected or had been destroyed, and where coal, ore or other minerals assessed under the triennial assessment had been mined out since such triennial assessment. Where such changes had taken place, the notice of the inter-triennial assessment required to be given by the assessors to the taxpayers, under section 510 of the Act of 1933, is the same as that provided in section 509. It would seem that longer notice should be given where the assessment cannot be changed for three years than where the taxpayer can appeal each year. The former law upon the same subject, therefore, would indicate that the notice required by section 604 of the Act of 1943 would be reasonable and sufficient if published three weeks before the day fixed for appeal.

Reading section 604 of the Act of 1943, in connection with the other sections thereof, with the purpose of the act and the circumstances under which it was passed in mind, and in the light of the Act of 1933, supra, the

former law upon the same subject, we are of the opinion that only reasonable notice by publication, that the assessment roll was completed and that notice of appeal should be filed on or before November 15th, was intended by the legislature, and that such notice by publication four full weeks prior to November 15, 1945, the final day fixed for the notice of appeal, in the case at bar, constituted such reasonable notice. As the real estate in question is situate in the Borough of Lewistown, in a suburb of which appellants reside, and where The Sentinel, the daily paper in which the notice appeared on the 18th, 19th and 20th days of October, is published, appellants had the notice required by section 604 of the Act of 1943, supra, and their notice of appeal and appeal to the board of assessment and revision of taxes was too late.

Appellants must have known that this property was assessed for the year 1946, at $14,000, because it was assessed at that valuation for the years 1944 and 1945. They paid the taxes thereon for those years, and they received no personal notice of any change in their assessment for 1946, and yet, notwithstanding the notice published October 18, 19 and 20, 1945, they took no action until December 27, 1945. We are unable, therefore, to see how the delay in the completion of the assessment roll in any way prejudiced appellants, depriving them of the right to be heard before the board of revision or otherwise operated to their disadvantage.

Furthermore, section 702 of the Act of 1943, supra, expressly provides that appeals from assessments shall not be heard by the board later than the first day of December. In Dougherty's Appeal, 321 Pa. 170, 172, in construing a similar provision of the Act of May 13, 1856, P. L. 567, 53 PS §4812, the Supreme Court said, quoting the lower court:

" 'It is thus obvious that under the act in question appeals must be filed with the Board of Revision of Taxes

and considered by the first of December of the year in which the assessment is made. Such procedure is, of course, necessary for the orderly administration of our municipal government in order that proper tax bills may be promptly in the hands of the Receiver of Taxes at the beginning of each year.' "

If no appeal is taken from the assessment of real estate for taxes by the board of assessment and revision of taxes within the time allowed by law, the assessment becomes binding and conclusive. Philadelphia v. Dougherty, 153 Pa. Superior Ct. 554, 559. We are therefore of the opinion that the appellants having failed to file their notice of appeal and appeal from the assessment of the within described real estate for taxes for the year 1946, within the time allowed by law, their assessment became binding and conclusive and the appeal in this case should be quashed.

Even if the appeal in this case were not quashed and the case were considered on its merits, it would have to be dismissed. In the return of the assessor the sale price of the premises is given at $19,000, the real value at $35,000, and the premises assessed for taxes at $14,000. The testimony on behalf of the appellants shows that the actual value of the premises is $20,500 divided into $16,000 for the ground and $4,500 for the improvements. This valuation was made by the local real estate board and testified to by the chairman of the committee who made the appraisement. The witness testified that the figure given by him was the fair market value of the premises, which is the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell. This is the proper value as the basis for taxation: Hudson Coal Company's Appeal, 327 Pa. 247, 251. The assessed value as returned by the assessor and fixed by the board of assessment and revision of taxes was only $14,000, or less than 69 percent of the actual value of $20,450 fixed by the testimony on behalf of appellants.

In Market Street National Bank of Shamokin v. Coal Township, 156 Pa. Superior Ct. 182, 185, the only appellate court case we have found under the Act of 1943, it was held that while, as a foundation for an orderly structure, assessments should be equalized to meet the requirements of uniformity, this can best be done by compliance with the Act of May 21, 1943, P. L. 571, sec. 602, which requires that township assessments of taxable property in a county of the fifth class shall be at "the actual value thereof". Section 602 of the Act of 1943, supra, applies likewise to boroughs in counties of the seventh class, such as Mifflin County. The court, therefore, could not, upon the evidence in this case, lower the assessed value of this property for 1946, and this appeal will also have to be dismissed.

### Decree

Now, April 22, 1946, for the reasons given in the foregoing opinion, the appeal in the within case is hereby quashed and dismissed at the cost of appellants.