## Lower Makefield Township Application

*James Fitzcharles, 3rd,* for petitioners.
*T. Sidney Cadwallader, 2d,* contra.

SATTERTHWAITE, J., March 8, 1957.—Pursuant to section 905 of The Second Class Township Law of May 1, 1933, P. L. 103, as amended, 53 PS §65905, the supervisors of the Township of Lower Makefield, by unanimous action, have petitioned this court for leave to levy a tax for township purposes on real property and occupations at a rate two mills in excess of the nine mills limit prescribed by law where such leave is not obtained. The matter came on for hearing on March 1, 1957, after public notice in compliance with a preliminary order of the court. In addition to the supervisors, several taxpayers appeared and were heard in opposition to the proposal.

The full prayer of the petition, to the extent and in the form as presented, must be refused without regard to the merits. The supervisors' request therein that we authorize the increased rate not only for the current year of 1957, but also for 1958 and 1959, is clearly beyond our power to grant at this time even were we so inclined. The township tax rate is an *annual* matter to be fixed in accordance with *current* considerations with which neither the supervisors nor the court should interfere by way of anticipation. Compare In re Bensalem Township Trailer Tax Ordinance Case, 84 D. & C. 502, 506-507, the discussion in which, although occasioned by different circumstances, is equally applicable here.

We also believe, on the record before us, that the application should be refused on the merits even if con-

fined to the year 1957. The applicable statutory language of subdivision (1) of subsection (*a*) of section 905 of the law authorizes the supervisors to levy taxes on real estate and occupations for the purposes and at the rates, inter alia, as follows:

"An annual township tax, for road, bridge, and general township purposes, not later than the fourth Monday of March of each year, not exceeding nine mills. Where the board of supervisors, by a majority action, shall, *upon due cause shown*, petition the court of quarter sessions for the right to levy additional millage, the court, after such public notice as it may direct and after hearing, *may* order a greater rate than nine mills but not exceeding five additional mills, to be levied. Such annual township tax shall include all levies for road, bridge and general township purposes." (Italics supplied.)

Since the statute authorizes approval of the increased rate only upon "due cause shown", and since the action of the court is permissive rather than mandatory, it has been held that whether or not such an application should be granted is a matter for the sound discretion of the court, and that the burden of demonstrating the justification therefor rests upon the supervisors: In re Lower Mt. Bethel Twp. Taxation, 23 Northamp. 266; Application of Supervisors of Washington Township, 28 Northamp. 51; Norristown Borough Petition, 81 D. & C. 538. See also In re Petition of Supervisors', 16 Schuyl. 269. We do not believe that the supervisors have discharged this burden in the instant proceedings.

The sole claimed purpose of the proposed increase in millage is to eliminate outstanding "temporary" or "floating" indebtedness of the township as represented by bank loans for past operational purposes, aggregating $40,000. Of this total, $30,000 was originally incurred in the year 1954 and $10,000 in 1956, both

apparently in anticipation of current revenues but in fact not paid therefrom. In reality, they represent earlier operating deficits. Nevertheless, and notwithstanding that the wisdom of the past fiscal policies of the supervisors which resulted therein has been questioned by the protesting taxpayers, no challenge to the legality of the obligations, and the binding nature thereof as present liabilities of the township, has been made. There is nothing in these proceedings, therefore, to overcome the presumptions that the supervisors had regularly performed their official duties in the original borrowing of the funds, or that the loans were valid when incurred: Georges Township v. Union Trust Co., 293 Pa. 364, 374. Accordingly, it is proper, and in fact obligatory, that the supervisors take appropriate action in due course to discharge the indebtedness out of the only funds available to them, to wit, current revenues. Our only present problem is whether or not they should raise the real estate and occupation tax rate for that purpose under the circumstances.

At the hearing, the supervisors presented the budget they have proposed for the year 1957, amounting to $133,452.39. Estimated revenues include an $8,000 bank balance, $68,000 from real estate taxes at the nine mill rate, $8,000 from taxes on occupations at the nine mill rate, $15,000 from a proposed new real estate transfer tax, $3,000 from collections of prior years' taxes and $31,000 from other sources including "State-aid" payments for roads. Out of such funds, the supervisors contemplate expending approximately $25,000 for general operations of government, $27,700 for fire and police protection, $59,000 for construction and maintenance of roads and related subjects and $10,000 for miscellaneous matters. In addition and still within the expected total receipts computed without regard to the proposed rate increase, they have allocated $10,-000 to be paid on account of principal, plus $1,200 in-

terest, on the bank loans in question. The assessed valuation of taxable real estate within the township for 1957 is $7,790,970, and of occupations, $965,000. Each mill of tax thereon, after the budget allowance for uncollectable levies, amounts to about $8,500.

On the surface and without knowledge of the actual situation, it would appear that a budget of over $130,-000 is inordinately large for a second class township. Such an off-hand conclusion in fact, however, is totally unjustified in this case. Lower Makefield Township is predominantly an area of high-priced residential developments, the owners and occupants of which are largely employed in other localities, many in Trenton, N. J., just across the Delaware River. It, like most municipalities in Bucks County, has been literally overwhelmed in the past few years by an unprecedented increase in population with the consequent enlargement of demands for many of the multitude of local municipal services and facilities which are expected by those living in suburban surroundings but usually furnished only by municipalities of higher class.

As is almost self-evident, the situation is further aggravated by the fact that tax revenues from newly erected homes inevitably have failed to keep pace, at least in point of time, with the necessity for the additional public expenditures occasioned thereby. On the other hand, such growth considerations and the inherent characteristics of the townships' population and assessable property make it all the more imperative that current operations be kept on a pay-as-you-go basis. In short, the fiscal problems facing the township are not only unusually startling in aggregate amount, but also particularly demanding of informed and judicious administration. In the absence of any charges of irregularity on the part of the supervisors or any definite evidence tending to afford concrete and specific support for protestants' generalized criticisms

of past deficit financing, we certainly are not in a position even to intimate that the budget is excessive or that the loans should not be paid off as expeditiously as is consistent with the rights of the taxpayers.

Under the circumstances, we are not in a position to pass upon the questions attempted to be raised by the protestants when they take issue with certain specific expense items of the proposed budget. Such problems are not for us to regulate and determine absent a showing of clear abuse of the powers which are vested by law in the local governing body. The Second Class Township Law, sec. 902, requires the supervisors to prepare and adopt a budget; this the instant supervisors have done. Having exercised the judgment and deliberation so required, their actions cannot intelligently, or even appropriately, be subjected to judicial review, particularly on the present inadequate record, in an effort merely to substitute the court's obviously less informed discretion therefor. Their on-the-scene knowledge of local affairs, both past and present, and their constant touch with the citizens who elected them to office, manifestly place them in far better position than we are to pass upon such matters. We do not intend to interfere therewith unless there has been a demonstrated violation of the duties so confided in them. In the present case there is no evidentiary basis whatsoever for such intervention on our part so far as the items of the budget are concerned. Compare the considerations expressed by President Judge Knight of Montgomery County in Borough of Narberth Petition, 64 Montg. 126, 127-128, construing the substantially identical provisions of the Borough Code relative to a similar application for approval of additional tax millage.

Since we are not convinced that the supervisors have abused the discretion required of them in budgetary matters, we believe that it would be not only un-

wise, but in fact extremely dangerous, for us even to attempt to revise the budget figures. We have mentioned and elaborated upon these considerations at probably undue length for the sole purpose of making it clearly understood that our refusal of the within petition is not based upon any criticism of the proposed budget on our part. To the contrary, our disinclination to approve the desired increases in the tax rate arises only because that very budget itself would predict the lack of any real necessity therefor.

Under the evidence as presented in these proceedings, and upon consideration of the supervisors' presumably studied and careful appraisal of the township's anticipated financial situation, we conclude that the authorized tax rate of nine mills, together with the other expected revenue items, would be adequate not only to carry on current operations, but also to retire, in the year 1957 alone, a full one-fourth of all the outstanding indebtedness carried over, at least in part, from the past three years' administration of the township government. The proposed increase in rate would bring in approximately $17,000 in additional funds, which, possibly with other economies, and when added to the $10,000 allocated thereto without regard for the increase, might well permit paying off almost three-fourths of that obligation in one year. This acceleration of result, however, while undoubtedly well motivated, does not appear to be fair to the taxpayers, and has not been shown to be necessary.

It is true that it has been held that outstanding indebtedness may justify the allowance of an increased tax rate to liquidate the same even though there be indications of a lack of "good housekeeping" by the supervisors in the past, a conclusion we have no reason to reach in this case (In re Gregg Township Roads, 2 D. & C. 515); although such a request may be refused where it appears, as it does not here, that the

outstanding indebtedness was in fact illegally contracted in the first place: Franklin Township's Road Tax, 7 D. & C. 607.

Furthermore, it is also true that if the bank which made the loans in question in this case were so inclined and complied with the precedent formalities definitely fixing the amount of the indebtedness, we presently see no reason why liability thereon might not be involuntarily enforced against the township under the mandamus and special tax levy provisions of section 907 of The Second Class Township Law, 53 PS §65907. See Lehigh Coal and Navigation Company's Appeal, 112 Pa. 360; Market Street National Bank of Shamokin v. Coal Township, 156 Pa. Superior Ct. 182.

Notwithstanding these principles, however, and conceding that the supervisors, in effect, are merely seeking a voluntary accomplishment of action the creditor might adversely take against them, it must be remembered that even if the latter procedure were invoked, the court still would have the power and duty, by the express provisions of section 907 of the Law, to extend payment of the obligations over a period of successive years: "If the amount of such indebtedness is so large as to render it inadvisable to collect the same in any one year taking into consideration other necessary taxation". We believe that the analogy of these limitations should likewise apply to our exercise of discretion in the instant proceedings. We therefore have concluded that it would definitely be "inadvisable" to repay such a large fraction of the outstanding loans in 1957 if it will necessitate an increase in the already burdensome taxation of real estate. Compare In re Lower Mt. Bethel Twp. Taxation, 23 Northamp. 266; Application of Colerain Township Supervisors, 55 D. & C. 555; In re Funding Bonds of Luzerne Township, 11 Fayette 132.

Moreover, even if we assume that the township has need for greater revenues as an abstract proposition, we are totally uninformed as to whether or not other possible avenues of taxation have been explored. It does appear that the supervisors propose this year, apparently for the first time, to levy a real estate transfer tax. Furthermore, the residential nature of the township and its limited powers as a township of the second class probably preclude many of the other taxes authorized for municipalities differently situated. However, we cannot blindly assume from these circumstances that there is no source of revenue available other than taxation of real estate and occupations. In this connection, we fully subscribe to the observations made in Norristown Borough Petition, 81 D. & C. 538, which involved a situation differing from that presented in the instant proceedings only in the purpose for which the increased millage was desired.

We, like the Montgomery County Court, most certainly do not wish to become a "super-taxing" body for all the municipalities of the county; duly-elected governing bodies should accept full responsibility not only for imposing existing and conventional taxes, but also in exercising intelligent initiative in creating new sources of tax revenue, particularly in view of the enlarged powers conferred by the Act of June 25, 1947, P. L. 1145, as amended, 53 PS §2015.1, et seq., which were, at least to a limited degree, extended to second class townships by the Act of September 29, 1951, P. L. 1640. Taxes levied pursuant to the Act of 1947 do not require court approval under section 905 of The Second Class Township Law even though the full nine mills rate provided thereby also be levied; however, the law does require that they be taken into account in the preparation of the annual budget and cannot be initiated after the adoption thereof: Rose Township v. Hollobaugh, 179 Pa. Superior Ct. 284.

*Order*

And now, March 8, 1957, for the reasons stated in the foregoing opinion, it is ordered and decreed that the prayer of the within petition be denied and refused.